# FOR PUBLICATION


FILED
Jul 16 2013, 6:53 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**ROBERT S. DANIELS**
**MATTHEW L. KELSEY**
DeFur Voran, LLP
Fishers, Indiana

ATTORNEYS FOR APPELLEES:

**JOSHUA A. BURKHARDT**
Beers Mallers Backs & Salin, LLP
Fort Wayne, Indiana

**STEPHEN R. SNYDER**
**RANDALL L. MORGAN**
Snyder Morgan LLP
Syracuse, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

THE CAIN FAMILY FARM, L.P., and )
THE CAIN FAMILY FARM, LLC, )
  )
    Appellants-Plaintiffs, )
  )
          vs. )    No. 57A03-1209-PL-394
  )
SCHRADER REAL ESTATE & AUCTION COMPANY, )
INC., CHARLES O. DRERUP, ANTLERS RIDGE, LLC, )
and CANDACE J. SOMERLOTT, )
  )
    Appellees-Defendants. )

APPEAL FROM THE NOBLE SUPERIOR COURT
The Honorable Robert E. Kirsch, Judge
Cause No. 57D01-0812-PL-21

**July 16, 2013**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

The Cain Family Farm, L.P. ("the Limited Partnership"), and The Cain Family Farm, LLC ("the LLC") (collectively "Cain Family Farm"), appeal the trial court's grant of summary judgment in favor of Charles O. Drerup and Antlers Ridge, LLC ("Antlers Ridge") on Cain Family Farm's complaint seeking to prevent the transfer of real property owned by the Limited Partnership to Antlers Ridge. Cain Family Farm also appeals the trial court's denial of its cross-motion for summary judgment. Cain Family Farm presents the following dispositive issues for review on appeal:

> 1. Whether the trial court erred when it concluded that there is no genuine issue of material fact regarding Candace Somerlott's apparent authority to bind the LLC when she executed a purchase agreement for the sale of real property to Antlers Ridge.
>
> 2. Whether the trial court erred when it interpreted and applied Indiana Code Section 23-18-3-1.1(b) of the Indiana Business Flexibility Act.

We affirm.[1]

## FACTS AND PROCEDURAL HISTORY

The Limited Partnership holds title to approximately 400 acres of real property in the Sylvan Lake area of Noble County ("the Sylvan Lake property"). The property consists of seventeen tracts, including lake front property, tillable farm acreage, and woodlands. The LLC is the sole general partner of the Limited Partnership and has exclusive control of the management and operation of the Limited Partnership. In particular, the Limited Partnership Agreement provides the LLC with "the full and exclusive power" to manage and operate the Limited Partnership's affairs, "including

---

[1] We held oral argument on May 13, 2013. We commend counsel for their excellent oral advocacy.

2

(but not limited to) the power to: (a) buy and sell any real or personal property to or from any person[.]" Appellants' App. at 17. The LLC, in turn, is "managed by its members." Id. at 193. The four Cain siblings, Candace Somerlott, Melanie Sue Todd, John Cain, Jr., and Patricia Dekko (collectively "the Cain siblings"), are the only members of the LLC and are also the only limited partners in the Limited Partnership.

On August 6, 2008, the Limited Partnership entered into an "Exclusive Contract for the Sale of Real Estate" ("Auction Contract") with Schrader Real Estate & Auction Company ("Schrader") for the sale of each tract of the Sylvan Lake property at public auction. Candace signed the Auction Contract as a member of the LLC, the general partner, for the Limited Partnership and with the consent of the other Cain siblings. The Auction Contract included a provision stating that the Limited Partnership "reserves the right to accept or reject auction bids." Id. at 19. Thereafter, Schrader advertised the Sylvan Lake property for sale at a public auction to be held on October 25, 2008, in Kendallville.

In early August, Candace had told Drerup that she and her siblings were going to sell the Sylvan Lake property, and Drerup expressed an interest in purchasing a portion of the Sylvan Lake property to use as a hunt club.[2] Drerup had known the father of the Cain siblings and had hunted on the Sylvan Lake property for decades with the family's permission. Candace advised Drerup that appraisals of the relevant portion of the property indicated a value between $1,650,000 and $3,000,000. Drerup proposed a possible purchase price of $2,000,000, but Candace told him that that price was

_____

[2] Drerup knew Candace personally and had contacted her on occasion when he observed trespassers on the property.

3

unacceptable to her and her siblings. Candace further advised Drerup that any sale would have to be approved by all of the siblings.

Before the auction, the Cain siblings discussed "reserve prices"[3] for each of the tracts of the Sylvan Lake property to be sold at auction, and they agreed that the minimum price for Tracts 2 through 17, if sold together, would be $2,500,000.[4] After Schrader representatives suggested that that price was too high, the Cain siblings agreed to a minimum price for Tracts 2 through 17 of $2,250,000. The Cain siblings also agreed that, if the bids did "not meet or exceed" the agreed minimum prices, the tracts would not be sold. Appellants' App. at 36. Finally, the Cain siblings agreed that unanimous consent was necessary to sell any tract of the Sylvan Lake property.

On October 25, Schrader conducted the auction. Candace, Melanie, and John attended, and Patricia was available by telephone. Drerup, a member of Antlers Ridge, attended the auction with other members of Antlers Ridge, and they intended to bid on several of the tracts offered for sale. At some point late in the auction, when the bidding had slowed, Kevin Jordan and Rex Schrader, who both worked for Schrader, met with Candace, Melanie, and John in a private room off of the main auction hall. Drerup was not present at that meeting. Jordan and Rex wanted to discuss the bidding, which was well below the minimum prices set for the tracts by the Cain siblings prior to the auction. None of the Cain siblings in attendance agreed that the tracts should sell for any amount

---

[3] While the parties refer to "reserve prices," neither the Auction Contract nor the auction notice indicated that a reserve, or minimum sale price, had been established. Actual reserve prices were unnecessary since the LLC reserved the right to reject any bid. We note that the parties dispute whether reserve prices had been set, but that dispute has no bearing on this appeal.

[4] Candace was interested in buying Tract 1, so she and the siblings agreed that Tract 1 would be sold separately from the other tracts at auction.

4

below the previously agreed upon minimum prices.[5] Candace eventually told Melanie and John that she would be "happy with whatever they wanted to do," and Candace left the meeting and returned to the auction hall. Appellants' App. at 1146. It is undisputed that, in the course of the private meeting, the Cain siblings rejected the bid on Tract 5 because it was too low.

A short time later, Melanie and John also returned to the auction hall. The auctioneer announced that all but one tract of the Sylvan Lake property, Tract 5, would be sold that day, and the auctioneer commenced a two minute countdown for final bids. Neither Melanie nor John heard that announcement, and they did nothing to interrupt the auction. At the close of bidding, Antlers Ridge had made the highest bids on Tracts 2 through 4 and 6 through 17, for a total purchase price of $1,350,000. Candace had made the highest bid on Tract 1, but that bid was below the minimum price previously agreed upon by the Cain siblings.

After Candace heard the auctioneer announce that the tracts would be sold that day, she and her husband looked at the bidding for Tract 1 and observed that the bid was too low. Candace "called Rex over to the table" where she and her husband were sitting, and she indicated to Rex that Tract 1 would not be sold because the final bid was too low. According to Candace, Rex responded, in a "gruff and rough demeanor," "Oh yes you are. We have already announced it. The farm is selling today. It is selling today." Appellants' App. at 1187. Candace testified that as he made those statements, Rex had "put his hands on the table [and] leaned over in my face[.]" Id.

_____

[5] The designated evidence is in dispute whether Patricia consented to sell the tracts at prices below the previously agreed upon minimum prices. Again, this dispute in the evidence has no bearing on this appeal.

5

At the conclusion of the bidding, Melanie and John went outside to discuss the auction, and then they returned inside to find Candace. In the meantime, Schrader had prepared and Candace and Drerup had signed a purchase agreement for Antlers Ridge's purchase of Tracts 2 through 4 and 6 through 17, for a total purchase price of $1,350,000 ("the Purchase Agreement"). Candace executed the Purchase Agreement in the name of the LLC, in its capacity as the general partner of the Limited Partnership.

Approximately two weeks after the auction, "the Limited Partnership and LLC, through [their] legal counsel" wrote a letter to Schrader "demand[ing]" that the Purchase Agreement be rescinded, and Cain Family Farm did not close on the sale. Id. at 318. And on December 23, Cain Family Farm filed a complaint against Schrader, Antlers Ridge, and Candace alleging breach of contract (against Schrader) and breach of fiduciary duty (against Candace), seeking to quiet title (against Antlers Ridge), and seeking a declaratory judgment and attorney's fees. After filing an answer and counterclaim for specific performance of the Purchase Agreement, Antlers Ridge filed a motion for summary judgment,[6] and Cain Family Farm filed a cross-motion for summary judgment. Following a hearing, the trial court entered summary judgment in favor of Antlers Ridge and denied Cain Family Farm's cross-motion for summary judgment. The trial court concluded in relevant part:

> 11. Although they point to Schrader as the responsible party, the Cain Entities in their complaint effectively conceded through their own allegations that actions at the October 25, 2008[,] auction "created an appearance of actual and/or apparent authority on behalf of Candace to execute the Purchase Agreements mentioned above." See Complaint, [paragraph] 31. Schrader served as the Cain Entities' exclusive agent for

---

[6] Schrader and Candace also filed summary judgment motions, which were denied after a hearing, but the denial of those motions is not challenged in this appeal.

purposes of selling the Real Estate at the public auction pursuant to the admittedly authorized Auction Contract and such exclusive agency was further set forth in the auction advertisements disseminated to the public. . . .

* * *

14. Based upon the designated evidence, the Court concludes that the Cain Entities placed Candace in a position to perform acts appearing reasonable to a third person such as Drerup, including executing the Antlers Ridge Purchase Agreement, and their action in doing so was sufficient to endow Candace with apparent authority. See Gallant Ins. Co. v. Isaac, 751 N.E.2d 672, 677 (Ind. 2001). Moreover, consistent with Candace's own belief as to her authority to execute the Antlers Ridge Purchase Agreement on behalf of the Cain Entities and the expectation that she would be solely executing any purchase agreements resulting from the auction on behalf of the Cain Entities, and with no objections separately communicated by John or Melanie to any bidder at the auction, the Antlers Ridge Defendants, like Dreyer & Reinbold in AutoXchange.com[, Inc. v. Dreyer & Reinbold, Inc., 816 N.E.2d 40 (Ind. Ct. App. 2004)], reasonably believed that Candace possessed such authority.

15. Based upon the designated evidence, the Court further separately and alternatively concludes that Candace's execution of the Antlers Ridge Purchase Agreement was, like the agent in AutoXchange.com, nothing more than what she had historically done on behalf of the Cain Entities as limited partner of the Cain Family Farm and member of [the LLC] and she possessed the inherent authority to do so. . . . Moreover, consistent with Candace's status within the Cain Entities, her leading role in connection with the auction, and the expectation that she would be solely executing any purchase agreements resulting from the auction on behalf of the Cain Entities, and with no objections separately communicated by John or Melanie to any bidder at the auction, the Antlers Ridge Defendants, like Dreyer & Reinbold in AutoXchange.com, reasonably believed that Candace possessed such authority and had no notice to the contrary.

Appellants' App. at 29-31. This interlocutory appeal as of right under Indiana Appellate Rule 14(A)(4) ensued.

7

## DISCUSSION AND DECISION

### Standard of Review

Our standard of review for summary judgment appeals is well established:

> When reviewing a grant [or denial] of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind. 2009) (citations omitted). The party appealing a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. Knoebel v. Clark County Superior Court No. 1, 901 N.E.2d 529, 531-32 (Ind. Ct. App. 2009). Where the facts are undisputed and the issue presented is a pure question of law, we review the matter de novo. Crum v. City of Terre Haute ex rel. Dep't of Redev., 812 N.E.2d 164, 166 (Ind. Ct. App. 2004). While we are not bound by the trial court's findings and conclusions and give them no deference, they aid our review by providing the reasons for the trial court's decision. See GDC Envtl. Servs. Inc. v. Ransbottom Landfill, 740 N.E.2d 1254, 1257 (Ind. Ct. App. 2000).

**Issue One:  Apparent Authority**

Cain Family Farm contends that Candace, in her capacity as a member of the LLC, "had neither the apparent nor inherent authority to bind the LLC" and, by extension, the Limited Partnership, to the Purchase Agreement.  Brief of Appellants at 27.  Cain Family Farm maintains that the trial court "incorrectly applied prior case law on apparent and inherent authority," the trial court's holding "was inconsistent with the facts designated by the Cain Family Farm," and "[a]t the very least, whether [Candace] is cloaked with apparent and/or inherent authority to execute the [Purchase Agreement] is a genuine issue of material fact" precluding summary judgment.  Id.  We cannot agree.

Apparent authority is the authority that a third person reasonably believes an agent to possess because of some manifestation from the agent's principal.  Pepkowski v. Life of Indiana Ins. Co., 535 N.E.2d 1164, 1166 (Ind. 1989).  The necessary manifestation is one made by the principal to a third party, who in turn is instilled with a reasonable belief that another individual is an agent of the principal.  Id. at 1166-67.  It is essential that there be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party.  Id. at 1167.  Statements or manifestations made by the agent are not sufficient to create an apparent agency relationship.  Id.  Generally, the question of whether an agency relationship exists is a question of fact.  Douglas v. Monroe, 743 N.E.2d 1181, 1187 (Ind. Ct. App. 2001).  However, if the evidence is undisputed, there are times when summary judgment is appropriate in agency cases.  Id.  In Gallant Insurance Co. v. Isaac, 751 N.E.2d 672, 677 (Ind. 2001), our supreme court observed that

9

it is clear that the "manifestations" referred to in Pepkowski need not be in the form of direct communications, but rather the placing of the agent in a position to perform acts or make representations which appear reasonable to a third person is a sufficient manifestation to endow the agent with apparent authority.

Here, Candace and two of her siblings were present throughout the auction, and the undisputed designated evidence shows that Drerup knew that Candace and her two siblings had "met in private"; they had rejected the bid on Tract 5; and, insofar as Drerup knew or had reason to believe, they had not rejected the bids by Antlers Ridge on Tracts 2 through 4 and 6 through 17.[7]  Appellants' App. at 424.  Indeed, following the Cain siblings' private meeting with Schrader representatives, Schrader, the Cains' exclusive agent under the Auction Contract, announced to the audience that all but Tract 5 would sell that day.  The Cain siblings had a right to reject any bid, and they had exercised their right to reject the bid on Tract 5, which the auctioneer announced, but they did not indicate to Drerup, either in person or through Schrader, that they had any objection to the Antlers Ridge bids.  As such, by their conduct and through their agent, Schrader, the Cain siblings indirectly communicated to Drerup and Antlers Ridge that they had accepted the remaining bids at the close of the auction.

Schrader then presented the Purchase Agreement to Drerup and Candace to be signed.  Again, Candace had previously communicated to Drerup that the consent of all the Cain siblings was required to sell the property. Because the Cain siblings attended the

_____

[7] To the extent the Cain siblings have testified that they tried to reject the Antlers Ridge bids but were told by Schrader representatives that it was "too late" to do so, Appellants' App. at 324, there is no designated evidence showing that Drerup or any other members of Antlers Ridge were aware of any such attempt prior to the execution of the Purchase Agreement.  The Cain siblings' claims against Schrader are not before us.

auction[8] and did not indicate to Drerup that they had rejected the Antlers Ridge bids, and because Schrader, Cain Family Farm's exclusive agent for the sale, presented the Purchase Agreement for Candace's and Drerup's signatures, Drerup reasonably believed that Candace had obtained the consent of her siblings and was authorized to sign the Purchase Agreement.[9] Finally, in their Complaint, Cain Family Farm alleged that Schrader "created an appearance of actual and/or apparent authority on behalf of Candace to execute the Purchase Agreements[.]" Appellants' App. at 39. And the trial court concluded that Cain Family Farm thereby "effectively conceded . . . that actions at the October 25, 2008 auction" created the appearance of apparent authority. Id. at 30.[10]

Cain Family Farm has not designated evidence of facts showing the existence of a genuine issue of material fact on the question of apparent authority. We agree with the trial court's conclusion that Cain Family Farm "placed Candace in a position to perform acts appearing reasonable to a third person such as Drerup, including executing the Antlers Ridge Purchase Agreement, and their action in doing so was sufficient to endow

_____

[8] Again, Patricia was available by telephone.

[9] Candace and the two siblings were present when the auctioneer announced, after the family meeting in the kitchen, that the farm would be sold that day. While the two siblings have testified that they did not hear that announcement, that designated evidence has no bearing on the issue of apparent authority. It is undisputed that, at the time Candace executed the Purchase Agreement, Drerup reasonably believed that the Cain siblings had not rejected his final bid. Furthermore, while there is a dispute whether Drerup knew that the Cain siblings had set "reserve prices" for the tracts prior to the auction and that Antlers Ridge's final bids did not meet or exceed those reserve prices, it is undisputed that there were no published reserve prices the day of the auction and the Cain siblings had a right to reject bids and exercised that right with respect to Tract 5. Thus, even assuming that Drerup knew about the reserve prices that had been set prior to the auction, the undisputed designated evidence shows that Candace had apparent authority to bind the LLC when she executed the Purchase Agreement at the conclusion of the auction.

[10] To be clear, Cain Family Farm does not concede this issue. A plaintiff is entitled to argue theories in the alternative in a complaint, which is what Cain Family Farm did here. We merely observe that in its complaint Cain Family Farm attributed the "appearance" of apparent authority to Schrader's conduct. Appellants' App. at 39.

Candace with apparent authority." Id. While the existence of apparent authority is generally a question of fact, we hold that there are no genuine issues of material fact and that Candace had apparent authority, as a matter of law, to execute the Purchase Agreement.[11] See Gallant, 751 N.E.2d at 678 (holding insurance agency had apparent authority to bind insurance company as a matter of law).

**Issue Two: Indiana Code Section 23-18-3-1.1**

Cain Family Farm next contends that the trial court "erroneously applied I.C. § 23-18-3-1.1(b)" to conclude that Candace had the authority to bind the LLC to the Purchase Agreement. Indiana Code Section 23-18-3-1.1 provides:

(a) A limited liability company formed under this article after June 30, 1999, is governed by this section.

(b) Except as provided in subsection (c) or the articles of organization, each member is an agent of the limited liability company for the purpose of the limited liability company's business or affairs, and the act of any member, including the execution in the name of the limited liability company of an instrument for apparently carrying on in the usual way the business or affairs of the limited liability company, binds the limited liability company, unless:

(1) the acting member does not have authority to act for the limited liability company in the particular matter; and

(2) the person with whom the member is dealing has knowledge of the fact that the member does not have the authority to act.

(c) If the articles of organization provide for a manager or managers, and except to the extent provided in the articles of organization:

(1) a member acting solely in the capacity as a member is not an agent of the limited liability company; and

---

[11] Because we hold that Candace had apparent authority, we need not decide whether she had actual authority to bind the LLC.

12

(2) each manager is an agent of the limited liability company for the purpose of its business or affairs, and the act of any manager, including the execution in the name of the limited liability company of any instrument, for apparently carrying on in the usual way the business or affairs of the limited liability company binds the limited liability company, unless the manager does not have authority to act for the limited liability company in the particular matter, and the person with whom the manager is dealing has knowledge of the fact that the manager does not have the authority to act.

(d) An act of a manager or member that is not apparently for the carrying on in the usual way the business of the limited liability company does not bind the limited liability company unless authorized in accordance with a written operating agreement or by the unanimous consent of all members at any time.

(Emphases added).

Here, on this issue, the trial court concluded in relevant part that

the Cain Entities are bound to the Antlers Ridge Purchase Agreement pursuant to IC § 23-18-3-1.1(b). In this case, Candace was a limited partner of the [Limited Partnership] and member of the member-managed [LLC]. General Partner served as the sole general partner of the Cain Family Farm in "exclusive control" of the management and operation of the Cain Family Farm. Since General Partner's articles of organization contain no limits, General Partner possesses all of the powers of an individual "to do all things necessary or convenient to carry out its business and affairs," including but not limited to a) selling, conveying and otherwise disposing "of all or any part of its property," b) making contracts and incurring liabilities, and c) serving as a partner, member, manager or other agent of "any corporation, partnership, limited liability company, foreign limited liability company, joint venture, trust, or other enterprise." See IC § 23-18-2-2. The sale of the Real Estate was in furtherance of the admittedly authorized Auction Contract solely executed by Candace on behalf of the Cain Entities and well within the scope of the full and exclusive powers General Partner possessed as the sole general partner of the Cain Family Farm. Moreover, Candace's execution of the Antlers Ridge Purchase Agreement was consistent with her history of solely executing real estate documents on behalf of the Cain Entities and indeed the expectation that she would be solely executing any purchase agreements resulting from the auction on behalf of the Cain Entities. The Antlers Ridge Defendants finally had no knowledge that Candace purportedly lacked the authority to

13

> execute the Antlers Ridge Purchase Agreement. For their part, as bearing on the latter point, John and Melanie failed to separately communicate any objections to Candace or the Antlers Ridge Defendants while at the auction site as to Candace's authority to execute the Antlers Ridge Purchase Agreement on behalf of the Cain Entities.

Appellants' App. at 31-32 (emphasis added, citations to record omitted).

Cain Family Farm maintains that subsection (d) of the statute applies here, not subsection (b). In particular, Cain Family Farm asserts that there is no genuine issue of material fact that Candace's actions were "<u>not</u> apparently for the carrying on in the usual way the business of the [LLC]." Brief of Appellants at 20. And Cain Family Farm asserts that there is no genuine issue of material fact that Candace did not have the unanimous consent of the members of the LLC to bind it to the Purchase Agreement. Thus, Cain Family Farm contends that the Purchase Agreement is "not valid and enforceable." <u>Id.</u>

No Indiana court has yet interpreted or applied the statutory language at issue, namely, "apparently carrying on in the usual way the business or affairs of the limited liability company." I.C. § 23-18-3-1.1(b). Thus, we are presented with an issue of first impression. Cain Family Farm argues that it "is <u>not</u> in the business of selling real estate," the sale of the Sylvan Lake property was "a major endeavor," and the sale was a "liquidation of the assets" of Cain Family Farm. Brief of Appellants at 21-22. Thus, Cain Family Farm contends that Candace was not "apparently carrying on in the usual way the business or affairs" of the LLC when she executed the Purchase Agreement. <u>See</u> I.C. § 23-18-3-1.1(b). Antlers Ridge, however, contends that Cain Family Farm had sold real estate in the past; Candace had previously executed documents binding the LLC,

14

including a contract to develop real estate; and, as the trial court found, Candace, as a member of the general partner, had explicit authority to sell real estate under the Limited Partnership Agreement.

We agree with the trial court and hold that subsection (b) applies here. The business of the LLC was, simply, to act as the general partner of the Limited Partnership, which owned the real estate. The Limited Partnership Agreement gave the LLC "the full and exclusive power" to manage and operate the Limited Partnership's affairs, including the power to "buy and sell any real or personal property[.]" Appellants' App. at 198. Thus, as described in Issue One, when Candace signed the Purchase Agreement she "apparently carr[ied] on in the usual way the business" of the LLC, which was to act as the general partner of the Limited Partnership. Further, the undisputed evidence shows that all the Cain siblings agreed to sell the Sylvan Lake property at auction and had authorized Candace to execute the Auction Contract. Finally, because subsections (b)(1) and (b)(2) of Indiana Code Section 23-18-3-1.1 are exceptions written in the conjunctive, and because the undisputed designated evidence shows that Drerup had no knowledge or reason to believe that Candace did not have the authority to bind the LLC,[12] the Purchase Agreement is enforceable under subsection (b).

## Conclusion

The dispositive issue on appeal is whether Candace had apparent authority to bind the LLC and, by extension, the Limited Partnership, when she executed the Purchase Agreement. While the designated evidence reveals questions of material fact concerning

---

[12] Whether Candace had actual authority to bind the LLC and whether Schrader breached its contract or violated its fiduciary duty to Cain Family Farm are issues for another day.

15

whether Candace had actual authority to bind the LLC and whether Schrader breached its contract and violated its fiduciary duty to Cain Family Farm, those issues are not before us in this appeal. The undisputed designated evidence shows that the Cain siblings gave Drerup the reasonable belief that Candace represented them and was authorized to execute the Purchase Agreement on behalf of the LLC. During the auction, the Cain siblings rejected the bid on Tract 5, while, insofar as Drerup knew or had reason to believe, they had not rejected the Antlers Ridge bids on Tracts 2 through 4 and 6 through 17, and their agent, Schrader, expressly and publicly stated that the farm was being sold that day and presented Drerup and Candace with a purchase agreement. By all appearances, Candace had authority, and there are no indicia that would have placed Drerup on notice or inquiry notice that Candace did not have authority to sign the Purchase Agreement for the LLC. Thus, the Purchase Agreement is valid and enforceable under the doctrine of apparent authority. And because Candace executed the Purchase Agreement "for apparently carrying on in the usual way the business" of the LLC, namely, to act as the general partner of the Limited Partnership, the Purchase Agreement is also valid and enforceable under Indiana Code Section 23-18-3-1.1(b). Whether we consider the question of apparent authority under the common law or the Indiana Business Flexibility Act, the outcome is the same.

Affirmed.

BAILEY, J., and BARNES, J., concur.

16