**FOR PUBLICATION**



**FILED**
May 23 2014, 10:23 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN P. NICHOLS**
Anderson & Nichols
Terre Haute, Indiana

ATTORNEYS FOR APPELLEES:
Attorney for Jackson, Mifflin and Kearby
**THOMAS N. LESLIE**
Indianapolis, Indiana

Attorney for Sigma Chi Int. Fraternity and
Theta Pi of Sigma Chi
**KRISTINE LINDLEY**
Skiles DeTrude
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ANDREW J. ROGERS,                                )
                                                 )
    Appellant-Plaintiff,                     )
                                                 )
        vs.                               )    No. 84A04-1305-CT-224
                                                 )
SIGMA CHI INTERNATIONAL FRATERNITY,              )
THETA PI OF SIGMA CHI, ANCIL JACKSON,            )
BRIAN MIFFLIN, JR., and JOSHUA KEARBY,           )
                                                 )
    Appellees-Defendants.                    )

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Phillip I. Adler, Judge
Cause No. 84D02-1008-CT-7269

**Opinion – For Publication**

**May 23, 2014**

**MAY, Judge**

Andrew J. Rogers appeals summary judgment for Sigma Chi International fraternity ("the International"), its Terre Haute chapter ("the Chapter") (collectively, Sigma Chi"), and three individuals: Ancil Jackson, Brian Mifflin, Jr., and Joshua Kearby, (the "Individual Defendants"). Rogers alleges the defendants should have protected him from being assaulted at a party. He argues on appeal:[1]

1) Sigma Chi had a duty to protect him under premises liability principles because the Chapter had possession of the premises where he was injured;

2) the defendants had a duty to protect him under negligence principles because the assault was foreseeable or because the defendants assumed such a duty; and

3) the International was vicariously liable for the acts of the persons at the premises because it had apparent authority over them as Sigma Chi's agents.

We affirm.

## FACTS AND PROCEDURAL HISTORY[2]

In August 2008, Rogers was injured when he was attacked at a party hosted by Daniel Johnson, who was renting a house in Terre Haute ("the Premises") with the Individual Defendants and Bladen Nading.[3] The Premises was owned by R2r Properties,

---

[1] Rogers also argues he is entitled to punitive damages. As we affirm the summary judgment for the defendants, we need not address that argument. *See, e.g., Allstate Ins. Co. v. Axsom*, 696 N.E.2d 482, 485 (Ind. Ct. App. 1998) (an award of actual damages is a prerequisite to an award of punitive damages).

[2] We heard oral argument Tuesday, April 15, 2014, at the University of Southern Indiana as part of its Law Day observance. We thank the University for its hospitality and commend counsel on the quality of their oral advocacy.

[3] Johnson and Nading, both Sigma Chi members, were included as defendants in Rogers' complaint. It does not appear they participated in the summary judgment motion that led to this appeal.

LLC, which the record does not reflect was in any way related to Sigma Chi. The lease provided the tenants would pay all utilities and could not use the Premises for any purpose other than a private dwelling.

The Individual Defendants were all members of Sigma Chi, but the Chapter's president did not live there and Sigma Chi mail was not delivered there. Sigma Chi did not pay rent on the Premises. There were Greek letters in individual bedrooms, but not on the outside of the house or in the yard. The tenants paid the expenses for the gatherings they held there.

The Chapter had a house until spring of 2008, when it was repossessed and its residents were evicted. Thereafter, students who were Sigma Chi members had to live in university housing or private dwellings. The Chapter was assigned a room in the science building on campus where it could conduct its meetings and perform its rituals. Alumni of the Chapter had a storage locker where Chapter items were kept, but some ritual materials and pledge books were kept at the Premises so Chapter members could take them to the science building when needed. Kearby was treasurer of the Chapter, and he kept the Chapter's checkbook and a receipt book in his bedroom. Rogers said he believed some ritual garments called "spook suits" had been moved from the Sigma Chi house to the Premises for safekeeping. (App. at 366.)

The invitation to the party at which Rogers was assaulted appeared on Facebook in August of 2008. It announced a "Double Birthday Bash," (*id*. at 188), to celebrate the birthdays of Johnson, a friend of Rogers' from high school, and Johnson's girlfriend.

The location of the party was indicated only as "THE NEW HOUSE, Terre Haute IN." (*Id.* at 177.) The invitation said "**ALSO THIS IS NOT A RUSH EVENT, AND AS IT IS DURING DRY RUSH NO FRESHMEN MALES ALLOWED!!**." (*Id.*) The party took place at the Premises. Neither the Chapter nor the International sponsored the party, paid for it, or had any say in who was invited, but Mifflin said in his deposition that "anytime two or three fraternity members are together I believe per the [Interfraternity Council] rules, that's kind of considered a Greek function no matter where it's at." (*Id.* at 66.)

Rogers was a student at Northwestern University. He and three other friends of Johnson drove to Terre Haute to attend the party. While Rogers was intoxicated, another guest, Dana Scifres, punched him in the eye while Rogers sat on the floor.[4] Scifres was not a member of Sigma Chi. Rogers and Scifres had not met before the party, and Rogers said in a deposition that he did not think anybody could have anticipated the assault. Scifres had been to the house before, but he had not shown aggression or anger on those occasions. The Individual Defendants were not at the house when the assault took place.

## DISCUSSION AND DECISION

If pleadings, depositions, answers to interrogatories, admissions on file, and testimony show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law, a motion for summary judgment will be granted. *Bell v. Northside Fin. Corp.*, 452 N.E.2d 951, 953 (Ind. 1983). The motion

---

[4] Rogers does not remember the incident. In his deposition, he recounted what he was told by other guests.

should be resolved in favor of the party opposing it if there is any doubt as to the existence of a material factual issue. *Id.* The contents of all pleadings, affidavits and testimony are liberally construed in the light most favorable to the non-moving party. *Id.* Summary judgment is not an appropriate vehicle for the resolution of questions of credibility or weight of the evidence, nor is it appropriate when conflicting inferences may be drawn from undisputed facts. *Id.*

The standard by which we review a summary judgment is well-established. While the party losing in the trial court must persuade us the decision was erroneous, we face the same issues as did the trial court and analyze them in the same way. *Butler v. City of Indianapolis*, 668 N.E.2d 1227, 1228 (Ind. 1996). We carefully scrutinize a summary judgment to assure the losing party is not improperly prevented from having its day in court. *Id.*

1.     Sigma Chi's[5] Control over the Premises for Premises Liability Purposes

In premises liability cases, whether a duty is owed depends primarily on whether the defendant was in control of the premises when the accident occurred. *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004). The rationale is to subject to liability the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm. *Id.* Only the party who controls the land can remedy hazardous conditions on it, and only the party who controls the land has the right to prevent others from coming onto it. *Id*. at 385-86. As Sigma Chi did not control the

_____

[5] The Individual Defendants do not address on appeal whether they were in possession or control of the premises. Rogers' control argument focuses on Sigma Chi and not the individual tenants.

5

premises, summary judgment in its favor was appropriate.

Indiana has adopted the standard articulated in the Restatement (Second) of Torts § 343 to determine a landowner's liability to persons on the premises:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

*Burrell v. Meads*, 569 N.E.2d 637, 639-40 (Ind. 1991), *reh'g denied*.

The party exerting control over the land, the "possessor of land," is defined as follows:

> (a) a person who is in occupation of the land with intent to control it or
> (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
> (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

*Carroll by Carroll v. Jagoe Homes, Inc.*, 677 N.E.2d 612, 616 (Ind. Ct. App. 1997) (quoting Restatement (Second) of Torts § 328(E) (1965)), *trans. denied*.

Neither the International nor the Chapter had sufficient control over the Premises when Rogers was injured to give rise to a genuine issue of fact as to Sigma Chi's liability. The tenants leased the premises from R2r Properties, LLC, and no party directs us to anything in the record to suggest R2r and Sigma Chi are related. The tenants chose the house, without any input from Sigma Chi, because they needed a place to live while

6

they attended college. The Chapter no longer had a house where they could live, and it did not pay rent on the Premises. The Chapter's president did not live there, and the Chapter's mail was not delivered there. Chapter business was conducted on campus. There was evidence that during the 2008-2009 school year, four other tenants, some of whom were not Sigma Chi members, signed on to the lease and moved in. That indicates the Premises could not have been a Sigma Chi fraternity house.

Sigma Chi was not involved in the party in any way. The invitation was explicit that the party was not a rush event and the prohibition on attendance by freshman males was pursuant to a university rule, not a Sigma Chi rule. Rogers offers no authority to support his argument the payment of dues to Sigma Chi by the tenants gave Sigma Chi control over the premises, and we decline to hold it does.

We acknowledge what Rogers characterizes as "an abundance of evidence that the International considered this house as a chapter house of the fraternity," (Rogers Br. at 12); the International accepted dues from the Chapter, there were fraternity letters and fraternity materials in the house, and the residents of the house were Sigma Chi members.[6] We cannot say those facts give rise to a genuine issue whether Sigma Chi is or has been "in occupation of land with intent to control it," or was "entitled to immediate occupation of the land." There is no issue of fact regarding control for premises liability purposes.

In a somewhat similar situation, the Iowa Court of Appeals found a fraternity did

---

[6] Rogers also notes the invitation referred to the premises as "the new house." As Sigma Chi did not create or send the invitation, that does not demonstrate Sigma Chi's control over the premises.

not have control of a premises where some of its members were having a party. In *Brakeman v. Theta Lambda Chapter*, 01-0250, 2002 WL 31640619 (Iowa Ct. App. Nov. 25, 2002), Brakeman fell out of an upstairs window at a bar. She was a guest of a fraternity member. The fraternity had made arrangements to hold a party in a party room at the bar. The bar provided and dispersed all liquor, which was paid for as it was served. It used wristbands to distinguish between those who were of legal age to drink alcoholic beverages and those who were not. Besides the fraternity group, a second group not affiliated with the fraternity was in the room where the party was held. The fraternity was not charged for the party room.

Brakeman sued the fraternity on premises liability grounds. The Iowa court applied Restatement section 328E and determined the fraternity was not in control of the premises. It noted:

> Possessor status and the corresponding duty of due care turns not on ownership, but on occupation. Control is a necessary condition for any liability for breach of this duty. Liability is premised on control. The rationale behind this premise is that one who has transferred control of land is no longer in control of the property and cannot enter the property to correct defects. In order to have the occupation or control of premises necessary to impose a legal duty with respect to the condition or use of those premises, one must ordinarily have the power and the right to admit individuals to the premises, or to exclude them from the premises.

*Id*. at *2.

The fraternity did not have control of the premises when: 1) the bar staff was on the premises the entire time and took responsibility for determining if the patrons were of legal drinking age; 2) all alcohol was served by the staff of the establishment, and the

8

staff had the right to shut down the party if things got out of hand; 3) the premises were shared with another group; and 4) there was no evidence the fraternity had the right to enter the premises to cure any alleged defects, or that it was expected to cure any defects. *Id.* Therefore, there was "not substantial evidence in this case to support a finding defendant had the control necessary to be considered a 'possessor of the land.'" *Id*. at *3. Nor was there substantial evidence in the case before us to permit a finding Sigma Chi had the control necessary to be considered a 'possessor" of the Premises where Rogers was injured.

2. Duty to Protect Rogers under Negligence Principles

To recover in negligence, a plaintiff must establish: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a failure on the part of the defendant to conform his conduct to the requisite standard of care; and (3) an injury to the plaintiff proximately caused by the breach. *Schlotman v. Taza Cafe*, 868 N.E.2d 518, 521 (Ind. Ct. App. 2007), *reh'g denied, trans. denied*. Absent a duty, there can be no breach and, therefore, no recovery in negligence. *Id.* As the attack on Rogers was not foreseeable, the defendants had no duty to protect him and summary judgment on that ground was not error.

a. *Foreseeability of the Attack*

A duty to anticipate and to take steps against a criminal act of a third-party arises only when the facts of the particular case make it reasonably foreseeable that a criminal act is likely to occur. *Id.* To determine whether a landowner owes a duty to take

9

reasonable care to protect an invitee from the criminal acts of a third party, we apply a "totality of the circumstances" test to determine whether the crime was foreseeable. *Id.* We accordingly look to all the circumstances surrounding an event, including the nature, condition, and location of the land, and prior similar incidents, to determine whether a criminal act was foreseeable. *Id.* at 521-22. The number, nature, and location of prior similar incidents is a "substantial factor" in the determination of duty, *id.,* but the lack of prior similar incidents will not preclude a claim where the party in control of the premises knew or should have known that the criminal act was foreseeable. *Id.* at 522.

The party controlling the premises has no duty to ensure an invitee's safety, but does have a duty to take reasonable precautions to prevent foreseeable criminal acts against an invitee. *Id.* If the party controlling the premises is in a position to take reasonable precautions to protect his guest from a foreseeable criminal act, courts should not hesitate to hold that a duty exists. *Paragon Family Rest. v. Bartolini*, 799 N.E.2d 1048, 1053 (Ind. 2003).

Rogers notes a number of facts he contends indicate Sigma Chi might have had a duty to protect him. None of those facts appear to suggest the attack was foreseeable,[7] and Rogers offers no explanation why they do – rather, they apparently are meant to suggest he fits within the *Bartolini* language that Sigma Chi was "in a position to take reasonable precautions" to protect him from a foreseeable criminal act. *Id.* Rogers does

---

[7] *E.g.*, Rogers asserts "the house was being used as a fraternity house" and Rogers was invited to a party at the "new house," (Rogers Br. at 16); "the fraternity intentionally invited and charged individuals for a party where alcohol was served," (*id*. at 17), the fraternity members were serving alcohol, and there were fraternity letters and materials in the house.

not explicitly argue foreseeability need not be shown if the "in a position to take reasonable precautions" language is implicated, and we decline to so hold.

Rogers relies on *Delta Tau Delta v. Johnson,* 712 N.E.2d 968, 973 (Ind. 1999), where our Indiana Supreme Court held a sexual assault on a guest at a fraternity party was foreseeable. During the two years before the assault, there had been an assault by a fraternity member during a party at Delta Tau Delta where alcohol was served, and on another occasion a blindfolded female was forced to drink alcohol until she was sick and was pulled up out of the chair and spanked when she refused to drink. The month before this sexual assault occurred, the fraternity was provided with information from the national organization concerning rape and sexual assault on college campuses. "We believe that to hold that a sexual assault in this situation was not foreseeable, as a matter of law, would ignore the facts and allow [Delta Tau Delta] to flaunt the warning signs at the risk of all of its guests." *Id.* at 974.

*Delta Tau Delta* does not control. Rogers concedes Sigma Chi did not own the Premises in the case before us, while Delta Tau Delta owned the house where the attack in that case took place. In *Delta Tau Delta* there was ample evidence to give rise to a genuine issue of fact as to whether the assault on Johnson was foreseeable. There is no such evidence in the case before us.

The Individual Defendants note there was no evidence they "were on notice as to the brutal tendencies of Scifres before the attack," (Br. of Appellees Ancil Jackson, Brian Mifflin, Jr., and Joshua Kearby (hereinafter "Individual Defendants Br.") at 12),

11

and Rogers offers no evidence they were.  The decision to have the party was Johnson's, not theirs, and Johnson invited both Rogers and his attacker.  The Individual Defendants were not at the party when Rogers was attacked.  Rogers admitted he does not think anyone could have anticipated the assault was going to happen.

The International notes it did not plan, sponsor, authorize or hold the party, nor did it decide who to invite.  It therefore disputes Rogers' statement it "intentionally invited and charged individuals for a party where alcohol was served."  (Rogers Br. at 15.)  There was no evidence the International knew Scifres would be there or that he was violent.  Summary judgment on the ground the attack was not foreseeable was appropriate.

b. *Assumption of Duty*

Nor did the defendants assume a duty to protect Rogers against an attack.  A duty of care may arise where one party assumes such a duty, either gratuitously or voluntarily.  *Yost v. Wabash Coll.*, 3 N.E.3d 509 (Ind. 2014).  The assumption of such a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person.  *Id*.  It requires affirmative, deliberate conduct such that it is apparent that the actor specifically undertook to perform the task that he is charged with having performed negligently; without actual assumption of the undertaking there can be no correlative legal duty to perform that undertaking carefully.  *Id*.  Where the evidence in the record is insufficient to establish such a duty, the court will decide the issue as a matter of law.  *Id.*

12

Liability for the breach of assumed duty is explained in the Restatement (Third) of Torts: Physical and Emotional Harm § 42 (2012):

> An actor who undertakes to render services to another and who knows or should know that the services will reduce the risk of physical harm to the other has a duty of reasonable care to the other in conducting the undertaking if:
> (a) the failure to exercise such care increases the risk of harm beyond that which existed without the undertaking, or
> (b) the person to whom the services are rendered or another relies on the actor's exercising reasonable care in the undertaking.

Thus, to impose liability resulting from breach of assumed duty, it is essential to identify and focus on the specific services undertaken. *Yost*, 3 N.E.3d at 517. Liability attaches only for the failure to exercise reasonable care in conducting the "undertaking." *Id.*

Rogers says "[h]aving invited Rogers to this alcoholic fraternity party, the Appellees failed to protect him and other persons attending the party. Thus, the Appellees are liable for misfeasance and nonfeasance[8] when they invited him to the party." (Rogers Br. at 21.) The record reflects Rogers was not invited by any of the appellees, but was instead invited by Johnson, who was not involved in this summary judgment. As there was no evidence any defendant undertook to render any service to Rogers, there was no assumption of duty.

In *Coghlan v. Beta Theta Pi Fraternity,* 987 P.2d 300 (Idaho 1999), *reh'g denied*, Coghlan became intoxicated at parties hosted by two fraternities, then later fell from a

---

[8] Rogers quotes at some length from *Ember v. B.F.D., Inc.*, 490 N.E.2d 764, 770-71 (Ind. Ct. App. 1986), *opinion modified on denial of reh'g*, 521 N.E.2d 981 (Ind. Ct. App. 1988), *trans. denied*, where we discussed, as "another aspect of whether a duty has been gratuitously assumed," the question whether the defendant's conduct, or lack of it, was misfeasance or nonfeasance. But after setting forth that legal standard, he offers no argument as to how that distinction is significant in the case before us.

13

fire escape at her sorority house. The Idaho Supreme Court held there were fact issues as to whether her sorority voluntarily assumed a duty to protect her. The record supported inferences that

> Alpha Phi invited newly selected sorority members to attend various fraternity parties and knew or should have known that alcohol would be served to underage newly selected sorority members at the parties. The record also demonstrates that Alpha Phi appointed a "guardian angel" sorority member to accompany and assist Coghlan during the activities on the date of Coughlan's injuries. Further, the record supports the inference that Alpha Phi undertook to care for Coghlan after she became intoxicated by taking her back to the Alpha Phi Sorority house and leaving her in bed unattended in the third floor sleeping area of the house. After construing the facts in favor of Coghlan, we find that a material issue of fact exists as to whether the Alpha Phi Sorority voluntarily assumed a duty of reasonable care to supervise and protect Coghlan until she was out of danger of harm due to her intoxication.

*Id*. at 314.

*Coughlan* does not suggest the defendants in the case before us could have assumed a duty toward Rogers. There was no "affirmative conduct" by Sigma Chi of the type that would show it voluntarily assumed a duty to protect Rogers, as it was not aware the party was occurring; it did not plan, authorize, hold, or pay for the party; and it did not monitor or control the activities of any Chapter member. Nor did Sigma Chi make any agreement to protect Rogers during the party. The Individual Defendants note that in *Coughlan,* there was evidence of the sorority's "level of control," (Individual Defendants Br. at 16), over Coughlan's behavior that has no analogue in the case before us; they could not have exercised control over Rogers because they were not present. Summary judgment for the defendants on the ground they assumed no duty was appropriate.

14

### 3. Sigma Chi's Vicarious Liability as Apparent Principal

Rogers argues he "reasonably believed that the Chapter fraternity and its members were acting under the authority of [the International] and on behalf of the International when holding the party at the house." (Rogers Br. at 24.) As there was no evidence Sigma Chi did anything that would permit such a reasonable belief on Rogers' part, none of the defendants were apparent agents of the International.

"Apparent authority is the authority that a third person reasonably believes an agent to possess because of some manifestation *from the agent's principal.*" *Cain Family Farm, L.P. v. Schrader Real Estate & Auction Co., Inc.,* 991 N.E.2d 971, 977 (Ind. Ct. App. 2013). If, because of the principal's manifestations, a third party reasonably believes that in dealing with the apparent agent he is dealing with the principal's servant or agent and exposes himself to the negligent conduct because of the principal's manifestations, then the principal may be held liable for that negligent conduct. *Sword v. NKC Hospitals, Inc.,* 714 N.E.2d 142, 149 (Ind. 1999) (citing Restatement (Second) of Agency § 267).

The necessary manifestation is one made by the principal to a third party, who in turn is instilled with a reasonable belief that another individual is an agent of the principal. *Cain Family Farm,* 991 N.E.2d at 977. The direct or indirect communication that instills a reasonable belief in the mind of the third party must come from the principal; statements or manifestations made by the agent are not sufficient to create an apparent agency relationship. *Id.* The "manifestations" need not be in the form of direct

15

communications, but rather the placing of the agent in a position to perform acts or make representations that appear reasonable to a third person is a sufficient manifestation to endow the agent with apparent authority. *Id.* Whether there is an agency relationship is generally a question of fact. *Id.* But if the evidence is undisputed, as it is in the case before us, summary judgment may be appropriate. *Id.*

Rogers asserts he reasonably believed the local Chapter and its members were acting under the authority of the International and on its behalf when it held the party. However, Sigma Chi made no manifestation that reasonably could have given rise to such a belief.

The International[9] argues there is no evidence it made the necessary "affirmative manifestations" that would permit Rogers to form a reasonable belief Sigma Chi was a principal. Rogers was never told Sigma Chi was hosting or paying for the party, that the fraternity had any control over the party, or that it knew Scifres would be there. In fact, the record does not reflect there was any communication of any kind between Sigma Chi and Rogers.

Rogers asserts, without explanation or citation to the record, that the International "held itself out as having a Local chapter which was having a fraternity party when the assault occurred," (Rogers Br. at 31), and "the fraternity party was being held as [sic] a house which was considered the chapter house for the fraternity." (*Id.*) As noted above,

---

[9] The Individual Defendants note, correctly, that Rogers' agency argument is directed at Sigma Chi, and not them.

16

the record does not appear to support the characterization of the event as a "fraternity party" or that the Premises was "considered the chapter house." Rogers says "[t]he fraternity advertised the party as a party at the 'new house,'" (*id.*), but the record indicates the only "advertisement" was in the form of Johnson's Facebook posting and not any advertisement by "the fraternity."

Rogers correctly notes there were fraternity "letters and memorabilia" inside the house, (*id.*), as was the fraternity checkbook, but he offers no argument or explanation why these amounted to manifestations "*from the agent's principal*", *Cain Family Farm,* 991 N.E.2d at 977, (here, the International), that could give rise to apparent agency. We decline to hold the presence of fraternity materials in a private residence amounts to a manifestation by an international fraternity that the tenants of that residence are acting as the fraternity's agents. Summary judgment for the defendants on that ground was not error.

## CONCLUSION

Sigma Chi did not have possession of the premises where Rogers was injured, the defendants had no duty to protect him from the assault, and the International was not vicariously liable for the acts of the persons at the premises because it had no actual or apparent authority over them. We therefore affirm.

Affirmed.

BROWN, J., and BARTEAU, Sr. J., concur.

17