FILED

Nov 01 2018, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Christopher P. Jeter
Massillamany Jeter & Carson LLP
Fishers, Indiana

ATTORNEYS FOR APPELLEE

Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana

Michael E. Brown
Kightlinger & Gray, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Indy Auto Man, LLC,

*Appellant-Plaintiff,*

v.

Keown & Kratz, LLC, and
Dustin Stohler,

*Appellees-Defendants*

November 1, 2018

Court of Appeals Case No.
18A-PL-1154

Appeal from the Hamilton
Superior Court

The Honorable J. Richard
Campbell, Judge

Trial Court Cause No.
29D04-1507-PL-5455

**Baker, Judge.**

Indy Auto Man, LLC (IAM), appeals the trial court's order granting summary judgment in favor of Keown & Kratz, LLC (the Firm), on IAM's legal malpractice complaint. Finding that there are genuine issues of material fact that must be resolved by a factfinder, we reverse and remand for further proceedings.

## Facts

IAM is a used car dealership that, at the time of the facts giving rise to this appeal, was located in Carmel. Yevgeniy Gorin is one of IAM's two principal members. In August 2013, IAM was the named defendant in two unrelated lawsuits.

Mario Massillamany is Gorin's friend and long-time attorney. Gorin attempted to retain Massillamany (who was then with Barnes & Thornburg) to represent IAM in the two lawsuits, but Massillamany declined. Gorin asked that Massillamany recommend a "good reputable attorney" with "some backing to them" because IAM had made the mistake in the past of retaining "backyard mechanics," or attorneys "that were not associated with anyone," costing it "a lot of money" as a result. Appellant's App. Vol. III p. 30. Massillamany recommended that IAM hire Dustin Stohler, a college friend, whom he knew to be affiliated with the Firm.

The Firm is a fifty-fifty limited liability company owned by William Keown and Donald Kratz. The Firm has no employees or secretarial staff and, while Keown and Kratz split expenses, they maintain separate clients and profits.

[5]     In early 2013, the Firm realized that it was having to refer increasing numbers of prospective clients to other attorneys for litigation needs. In April 2013, the Firm and Stohler began discussing the possibility of working together. They reached an understanding but did not memorialize it to writing. Evidently, the parties agreed that Stohler would work on some cases for the Firm but would also maintain his own separate clients. The Firm gave him rent-free office space, Firm business cards and letterhead, and a Firm email address. He was allowed to use the Firm's conference rooms and to have his mail delivered to the Firm's office address. Stohler was permitted to use the Firm's billing assistant for his work on Firm client files. The Firm also added Stohler to its legal malpractice insurance policy and, while the Firm claims that this was only intended to cover cases involving the Firm's clients for whom Stohler did work, there is nothing in writing in the record supporting that claim. In May 2013, an announcement appeared in the Wabash College alumni newsletter indicating that Stohler had "recently joined the Indianapolis law firm Keown and Kratz as a Litigation and Employment Attorney." *Id.* at 127. The Firm did not place the announcement.

[6]     IAM retained Stohler to represent it in the two pending cases. When filing his appearance and answer in both cases, he used Firm letterhead and listed the Firm address and his Firm email address as his contact information.

[7]     At some point, the relationship between Stohler and the Firm began to sour. Kratz and Keown found that Stohler was tardy, provided pleadings rife with errors, missed deadlines, failed to return calls to clients, and often failed to

apprise anyone of his whereabouts. They found him to be unprofessional and became concerned that he was abusing alcohol. In January 2014, Stohler stopped coming to work at the Firm and did not respond to phone calls or an email from Kratz. The Firm filed a missing person's report and the police found that he was "alive and well." *Id.* at 61. During Stohler's absence, mail addressed to him at the Firm arrived at the Firm's office and was placed on his desk without being opened. The Firm eventually learned that Stohler had accepted an in-house position at a collections firm.

[8] At some point either during or after Stohler's relationship with the Firm, he failed to respond to discovery within the appropriate timeframe on each of the two IAM cases. In one of those cases, a default judgment and damages award of approximately $60,000 were entered against IAM. When Gorin received notice of the damages award, he attempted to contact Stohler but was unsuccessful, so he reached out to Massillamany. Massillamany felt responsible for IAM's situation because he had recommended Stohler, so he stepped in as IAM's attorney in both cases. He was able to settle both cases for the aggregate sum of $45,000.

[9] In July 2015, IAM filed a legal malpractice complaint against Stohler and the Firm. IAM attempted to serve Stohler but was unsuccessful; he has never appeared in this case. On September 12, 2016, the Firm filed a motion for summary judgment, arguing that as a matter of law it did not owe IAM a duty

of care.  Following briefing and argument, on March 3, 2017, the trial court

entered summary judgment in favor of the Firm.  IAM now appeals.[1]

## Discussion and Decision

Our standard of review on summary judgment is well settled:

> The party moving for summary judgment has the burden of
> making a prima facie showing that there is no genuine issue of
> material fact and that the moving party is entitled to judgment as
> a matter of law.  *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012).
> Once these two requirements are met by the moving party, the
> burden then shifts to the non-moving party to show the existence
> of a genuine issue by setting forth specifically designated
> facts.  *Id.*  Any doubt as to any facts or inferences to be drawn
> therefrom must be resolved in favor of the non-moving
> party.  *Id.*  Summary judgment should be granted only if the
> evidence sanctioned by Indiana Trial Rule 56(C) shows there is
> no genuine issue of material fact and that the moving party
> deserves judgment as a matter of law.  *Freidline v. Shelby Ins.
> Co.*, 774 N.E.2d 37, 39 (Ind. 2002).

*Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016).

Our Supreme Court has cautioned that "[a]s long as competent evidence has

been designated in response to a summary judgment motion, . . . 'weighing [the

---

[1] IAM filed a first appeal in 2017.  This Court dismissed the appeal without prejudice, finding that the summary judgment order was not final because it did not address Stohler or include the "magic language" of Indiana Trial Rule 56(C).  *Indy Auto Man, LLC v. Keown & Kratz, LLC*, 84 N.E.3d 718, 771-72 (Ind. Ct. App. 2017).  On remand, IAM voluntarily dismissed Stohler from the case.  The Firm argues that this Court's opinion was erroneous and that IAM has forfeited its right to appeal because it did not seek rehearing or transfer.  There is no requirement that IAM have done so.  Instead, it chose to follow this Court's directive and is therefore entitled to bring this appeal.

evidence]—no matter how decisively the scales may seem to tip—[is] a matter for trial, not summary judgment.'" *Stafford v. Szymanowski*, 31 N.E.3d 959, 963 (Ind. 2015) (quoting *Hughley v. State*, 15 N.E.3d 1000, 1005-06 (Ind. 2014)). In other words, if *any* weighing of evidence—of the facts—is required, then summary judgment is inappropriate.

[11] Here, IAM argues that the Firm assumed a duty of care to it because Stohler was acting as the Firm's agent. For an agency relationship to arise, three elements must be established: (1) a manifestation of consent by the principal; (2) acceptance of authority by the agent; and (3) control exerted by the principal over the agent. *Bunger v. Demming*, 40 N.E.3d 887, 893 (Ind. Ct. App. 2015). Generally, whether an agency relationship existed is a question of fact. *Id.* at 894.

[12] IAM argues that Stohler had actual and/or apparent authority to act as the Firm's agent; we will address only the issue of apparent authority. Apparent authority is the authority that a third person reasonably believes an agent to possess because of some manifestation from the agent's principal. *E.g.*, *Rogers v. Sigma Chi Int'l Fraternity*, 9 N.E.3d 755, 764 (Ind. Ct. App. 2014). To find that a person had apparent authority to act for the principal, it is essential that there be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party. *Pepkowski v. Life of Ind. Ins. Co.*, 535 N.E.2d 1164, 1166-67 (Ind. 1989). The communication from the principal need not be made directly to the third party; instead, the communication is sufficient to endow the agent with apparent authority if it

placed the agent in a position to perform acts or make representations that appear reasonable to a third party. *Id.*

[13]     Here, the following facts are undisputed:

- The Firm provided Stohler with rent-free office space and allowed him to use the Firm's mailing address.
- The Firm provided Stohler with business cards and letterhead.
- The Firm provided Stohler with an email address, though he never activated it.
- Stohler used the Firm's contact information when filing appearances in the two IAM cases.
- The Firm added Stohler to its legal malpractice insurance policy. The Firm believes that was only intended to cover Stohler's work for the Firm's clients, but there is no written evidence supporting that belief.
- IAM sought to retain an attorney with the backing of a firm and selected Stohler, in part, because it believed that he was in such a situation.

The Firm emphasizes that when IAM retained Stohler, it was not familiar with the Firm or the arrangement that Stohler had with the Firm. But at his deposition, Gorin testified that "I knew [Stohler] was affiliated with the law firm. I don't know when I found that out." Appellant's App. Vol. III p. 30. Moreover, Massillamany attested that

> I informed [IAM] that I had an attorney, Dustin Stohler, he worked for a firm Keown & Kratz, they're a smaller firm, they can handle the work. They won't charge you the hourly rate that I was charging at the time at Barnes & Thornburg, they'd be cheaper and just as good. And I believe they're a Hamilton County firm. So I said, since your cases are in Hamilton County, it would be good to have a Hamilton County firm.

*Id.* at 69.

[14] In other words, Massillamany believed Stohler worked for the Firm, Wabash College published an advertisement announcing that Stohler worked for the Firm, and the court system was sending mail to the Firm on behalf of Stohler— all third parties who relied on manifestations made by the Firm (e.g., provision of letterhead, permission to use business address, etc.). At the very least, there is a question of fact as to whether IAM had a reasonable belief that Stohler was acting as the Firm's agent based on the Firm's manifestations. It is clear that this evidence must be weighed and evaluated by a trier of fact. Consequently, it was erroneous to enter summary judgment in favor of the Firm on IAM's complaint.[2]

[15] The judgment of the trial court is reversed and remanded for further proceedings.

May, J., and Robb, J., concur.

---

[2] We address only Stohler's apparent authority to act on behalf of the Firm in this appeal, finding that issue dispositive. We express no opinion as to whether Stohler may have also had actual authority. That, too, is an argument that must be evaluated by a factfinder.