# FOR PUBLICATION



**FILED**
Jul 02 2014, 11:10 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PETER S. KOVACS**
Fishers, Indiana

ATTORNEY FOR APPELLEE:

**TRACY N. BETZ**
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

SOMERVILLE AUTO TRANSPORT ) 
SERVICE, INC. and ROBERT SOUZA, )
                         )
     Appellant-Defendant, )
                         )
            vs. )     No. 49A02-1307-CC-559
                         )
AUTOMOTIVE FINANCE CORPORATION, )
                         )
     Appellee-Plaintiff. )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Michael D. Keele, Judge
Cause No. 49D07-0810-CC-049340

**July 2, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Somerville Auto Transport Service, Inc., and Robert Souza (together, "Somerville") appeal the trial court's orders placing the cause of action on the active docket and granting summary judgment in favor of Automotive Finance Corporation ("AFC"). Sommerville raises two issues, which we revise and restate as:

I.      Whether the court abused its discretion in placing the cause of action on the active docket; and

II.     Whether the court erred in entering summary judgment in favor of AFC and against Somerville.

We affirm.

## FACTS AND PROCEDURAL HISTORY

### Loan

Somerville operated an auto dealership in Somerville, Massachusetts. AFC was in the business of lending money to auto dealers to allow the dealer to acquire automobiles at auction for resale to the dealers' customers.

In October 2002, Somerville and AFC executed a Demand Promissory Note and Security Agreement (the "Agreement"). Pursuant to the Agreement, Somerville could request advances against a line of credit to finance its purchase of automobiles for resale. Also, in October 2002, Souza, the principal of Somerville, executed an Unconditional and Continuing Personal Guaranty which provided he was personally liable for Somerville's indebtedness to AFC. On February 24, 2006, on behalf of Somerville, Souza executed a Representation Authorization Letter stating in part that Robson Merenciano was authorized to buy and sell automobiles for Somerville and to execute company checks or drafts and any other necessary instruments or documents. AFC made advances to

2

Merenciano against Somerville's line of credit for the purchase of certain automobiles between September 2006 and February 2007, and Somerville did not timely repay AFC with respect to the amounts advanced for the purchase of these automobiles. On February 20, 2007, Somerville executed a Representation Removal Letter stating Merenciano was no longer authorized to conduct business on behalf of Somerville.

Proceedings

On October 30, 2008, AFC filed a complaint alleging under Count I that Somerville was in breach of contract by failing to repay its indebtedness pursuant to the terms of the Agreement; under Count II that Souza was personally liable for the indebtedness of Somerville under the Guaranty; and under Count III that Somerville and Souza committed fraud. AFC requested judgment under Counts I and II in the principal amount of $89,233.87 together with default interest, floorplan fees, late fees, attorney fees, and costs of collection. According to the chronological case summary ("CCS"), on April 13, 2009, Somerville filed a motion for stay of proceedings pending final adjudication of a related federal action, and on June 1, 2009, AFC filed a response in opposition to Somerville's motion. The court denied the motion for stay on June 2, 2009.

*Trial Rule 41(E) Proceedings*

On June 7, 2010, the trial court *sua sponte* issued notice to the parties that the cause was scheduled for hearing under Trial Rule 41(E) on June 28, 2010. On June 25, 2010, AFC filed a motion to vacate the hearing.[1]

---

[1] The CCS does not include an entry for this motion or indicate that the court held a hearing or ruled on the motion, and the copy of the motion in the appellants' appendix is not file-stamped. The copy

3

On May 2, 2011, the court *sua sponte* issued a notice to the parties that the cause would be dismissed under Trial Rule 41(E) at a hearing on June 27, 2011, unless sufficient cause was shown; however the court did not hold the scheduled hearing.[2] On June 27, 2011, AFC filed a Response to Rule 41(E) Notice which stated that it had appeared by counsel in open court on June 27, 2011 to show cause why the lawsuit should not be dismissed for inactivity and that it was submitting in writing its response to the court's notice "as follows: AFC submits that this matter has not been inactive, and requests that this matter remain pending because AFC has been conducting discovery as it prepares for trial. Indeed, AFC is presently awaiting [Somerville's] responses to its pending interrogatories and requests for production of documents." Appellants' Appendix at 33.

---

of the motion states that AFC had been actively litigating its claims against Somerville, that those efforts focused on having a lawsuit against it filed by Somerville in Massachusetts dismissed for improper venue, that the U.S. District Court for the District of Massachusetts had recently granted AFC's motion finding that Indiana is the proper venue for the claims, and that the parties were now free to focus their efforts on this Indiana proceeding.

[2] In the statement of facts in its brief, Somerville states its counsel personally appeared at the trial court's offices on June 27, 2011, prepared to argue for dismissal of the case, that a member of the court's staff informed its counsel that the case would be dismissed without the need for a hearing, that its counsel did not observe a representative from or on behalf of AFC at the trial court's offices, and that consequently "he submitted a proposed order with the trial court's clerk and left." Appellants' Brief at 5. These statements are consistent with the statements in Somerville's July 12, 2011 Verified Motion to Reconsider and Vacate Order Reinstating This Case.

In the statement of facts in its brief, AFC states that its counsel did in fact appear for the hearing on June 27, 2011 to show cause why the case should not be dismissed for inactivity, that court staff advised that the judge was not available to conduct the scheduled hearing and instructed counsel to submit a written notice of AFC's desire to keep the case on the court's active docket, and that AFC complied and filed and served its written response to the court's Trial Rule 41(E) notice that same day. These statements are consistent with AFC's June 27, 2011 Response to Rule 41(E) Notice and its July 25, 2011 response to Somerville's motion to reconsider in which it stated in part: "AFC complied, and filed (and served) its written response to the Court's Rule 41(E) notice that same day. Apparently counsel for [Somerville] also appeared on the morning of June 27 and submitted (but did not serve counsel for AFC) a proposed order dismissing the case with prejudice." Appellants' Appendix at 41.

4

On June 28, 2011, the trial court entered an order stating:

> This Cause having come before the Court on its own motion pursuant to Indiana Trial Rule 41(E), all parties having been given due notice, and the Court being duly advised.
>
> IT IS THEREFORE ORDERED, ADJUDGED, AND ADJUDICATED that this case is hereby dismissed with prejudice.

Id. at 31.

On July 6, 2011, the court *sua sponte* entered a CCS entry which provided:

> JACKET ENTRY: COURT HAVING REVIEWED [AFC'S] RESPONSE TO RULE 41(E) NOTICE HEREBY ORDERS THAT CAUSE IS RE-INSTATED ON COURT'S ACTIVE DOCKET. NOTICE TO ATTORNEYS.

Id. at 3.

On July 12, 2011, Somerville filed a Verified Motion to Reconsider and Vacate Order Reinstating This Case arguing that the July 6, 2011 order was void because "Indiana decisional authority and Rule 41(F) are clear that a Trial Rule 41(E) dismissal, with prejudice, can only be granted upon a showing by [AFC] satisfying Trial Rule 60(B)." Id. at 35. Somerville's motion also stated that, "[a]lthough not directly relevant to this Motion, it should be noted that the Court's reliance on AFC's response to Rule 41(E) notice to reinstate this case may be mistaken" and that "Somerville has not had an opportunity to respond substantively to AFC's assertion that this case is 'active' . . . ." Id. at 38.

On July 25, 2011, AFC filed a Verified Response to Somerville's Motion to Reconsider arguing in part that the court had the authority to enter the July 6, 2011 order under Trial Rule 60(A) because the "June 28, 2011 order appears to have been based on

5

an oversight or omission—namely the Court's mistaken belief that AFC did not appear at the appointed date and time to show cause why the case should remain active" and "once the Court learned that the assumption on which it based its June 28 order was incorrect, it entered a corrective order reinstating the case." Id. at 43. AFC also argued that the June 28, 2011 order dismissing the case was entered even though no Trial Rule 41(E) hearing was held on June 27, 2011, that Trial Rule 41(E)'s hearing requirement is essential and mandatory under the rule, and that the court's dismissal order was erroneous and the court acted appropriately in correcting the error.

Somerville filed a reply on July 27, 2011, arguing that motions under Trial Rule 60(A) are not to be used for purposes of correcting errors of substance, that the order dismissing the case cannot be described as one which is clerical in nature, and that a dismissal with prejudice may be set aside only in accordance with the provisions of Trial Rule 60(B) as required by Trial Rule 41(F). Somerville also argued that "[w]hen a court orders a hearing and notice of the hearing is sent to the plaintiff, the hearing requirement of Trial Rule 41(E) is satisfied, regardless of whether the plaintiff or his counsel attends the hearing." Id. at 52.

On September 7, 2011, the court held a hearing on the motion to reconsider. At the hearing, the court stated:

> [L]et's just get it on the record. . . . I was here that morning. . . . And if it had been reported to me by my staff that you gentlemen were here for this hearing, believe me, we would have conducted a 41(E) hearing.
>
> But what happened, in essence, is exactly what [AFC's counsel] described. It was reported to me upon submission of [Somerville's

6

counsel's] proposed order dismissing the case with prejudice that no one appeared on behalf of [AFC] that morning, which is not accurate.

And as a result thereof, I reviewed the proposed and tendered order and obviously I signed off on it.

And it was only then, as the record reflects and you gentlemen are well aware, days later that I became aware of the response [AFC] filed that day on the 27th, entered by the clerk I think on the 29th, and then probably brought to my attention a day or two later. You know, we had the three day holiday weekend. And obviously upon my review of what [AFC] had, in fact, filed on that day, I sua sponte, without question, entered the order reinstating the cause.

Wow. What interesting arguments honestly that are technically being made in this matter that I have never been asked to consider because frankly I've never been in a situation like this.

I'm going to need to take a look at it because my first reaction is clerical? Not really. Boy. We're talking substantive. When I'm reinstating a case that's been dismissed with prejudice and you look at the language in Trial Rule 41 and its pretty straightforward about if you have a dismissal with prejudice, you look at 60(B).

I guess that's why I'm wondering – I suggest at the outset, you know, if I ultimately grant your motion, you file the 60(B) maintaining a mistake – granted not your mistake. And I don't know why it's necessarily to be interpreted to be your mistake.

\* \* \* \* \*

You know, frankly, if we'd had the 41(E) hearing that morning, I think I know, in fact, what I would have been inclined to do and this case would likely have been allowed to proceed quite frankly.

Transcript at 30-32, 34. The court took the matter under advisement.

On September 9, 2011, the court issued an order denying Somerville's motion to reconsider stating in part:

The Court's June 28, 2011 order was based on an oversight or omission— namely the Court's mistaken belief that AFC did not appear at the

7

appointed date and time to show cause why the case should remain active. Once the Court learned that the assumption on which it based its June 28 order was incorrect, it entered a corrective order reinstating the case. Rule 60(A) allows a court on its own initiative to correct clerical mistakes and oversights or omissions which plague a judgment. Sarna v. Norcan Bank, 530 N.E.2d 113 (Ind. Ct. App. at 1988)[, reh'g denied, trans. denied]. There were several oversights or omissions plaguing the Court's dismissal order of June 28, 2011, including but not limited to the Court's failure to afford the parties a hearing as provided by Rule 41(E). No hearing preceded the Court's erroneous dismissal order in this case despite the arrival and appearance by counsel for AFC and [Somerville] on the morning of June 27, 2011. Therefore, the dismissal order of June 28, 2011 was improper and the Court corrected the error by vacating its June 28 order *sua sponte* by jacket entry to that effect.

Appellants' Appendix at 12. The court also rescheduled a hearing under Trial Rule 41(E) for October 27, 2011. Following that hearing, the court took the matter under advisement, and on October 31, 2011, set the cause for trial.

*Summary Judgment Proceedings*

On November 1, 2012, AFC filed a motion for partial summary judgment with respect to Counts I and II of the complaint together with designated evidence and a brief in support of the motion. On December 12, 2012, Somerville filed a brief and designation of materials in opposition to AFC's summary judgment motion. On January 10, 2013, AFC filed a reply. Following a hearing, the court entered an order on February 5, 2013, finding that AFC is entitled to partial summary judgment against Somerville and Souza. Somerville filed a motion to reconsider the ruling, and after a hearing the court denied the motion.

On May 14, 2013, AFC filed a motion to voluntarily dismiss Count III of the complaint and for entry of judgment on Counts I and II. On June 3, 2013, the court

8

entered a Final Judgment in favor of AFC and against Somerville and Souza in the principal amount of $89,331.63, plus pre-judgment interest in the amount of $90,757.69 through May 14, 2013, plus pre-judgment interest at the rate of $23.57 per day from that date through the date of judgment. The court later issued an order that Somerville pay AFC attorney fees in the amount of $51,446.45.

## DISCUSSION

## I.

The first issue is whether the trial court abused its discretion in *sua sponte* placing the cause of action on the active docket on July 6, 2011, after it had dismissed the action on its own motion on June 28, 2011, pursuant to Ind. Trial Rule 41(E). Trial Rule 41(E) provides in part:

> [W]hen no action has been taken in a civil case for a period of sixty [60] days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case. The court shall enter an order of dismissal at plaintiff's costs if the plaintiff shall not show sufficient cause at or before such hearing.

Trial Rule 41(F) provides: "For good cause shown and within a reasonable time the court may set aside a dismissal without prejudice. A dismissal with prejudice may be set aside by the court for the grounds and in accordance with the provisions of Rule 60(B)."

Ind. Trial Rule 60(A) provides:

> Of its own initiative or on the motion of any party and after such notice, if any, as the court orders, clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the trial court at any time before the Notice of Completion of Clerk's Record is filed under Appellate Rule 8.

9

Trial Rule 60(B) provides in part that "[o]n motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons: (1) mistake, surprise, or excusable neglect, . . . (6) the judgment is void . . . ," or "(8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in subparagraphs (1), (2), (3), and (4)." A movant filing a motion for reasons under Trial Rule 60(B)(1) and (8) must allege a meritorious claim or defense. Trial Rule 60(B).

Somerville asserts that the trial court erroneously reinstated the case because Trial Rule 41(F) requires a Trial Rule 60(B) motion before reinstating a case dismissed with prejudice, and AFC did not file a Trial Rule 60(B) motion. Somerville argues that Trial Rule 60(A) cannot provide relief from a dismissal with prejudice because the dismissal was not a clerical mistake or clerical or mechanical in nature and that motions under the rule are not to be used for purposes of correcting errors of substance. Somerville also contends that the fact that a hearing was not conducted is not a basis for reinstatement because the court had ordered a hearing.

AFC maintains that the case was properly reinstated after being mistakenly dismissed. Specifically, AFC argues that Trial Rule 41(F) does not limit a trial court's authority to take corrective action under Trial Rule 60(A), that where there is an error arising from oversight the court has the authority to correct the record pursuant to Trial Rule 60(A), that the court's failure to hold a hearing under Trial Rule 41(E) rendered the dismissal order void, and that the case would have been reinstated under Trial Rules 60(B)(1) and (6) and thus any error in reinstating under Trial Rule 60(A) was harmless.

10

In its reply brief, Somerville asserts that AFC's argument that the dismissal order is void due to the lack of an actual hearing fails because AFC was accorded all of the due process rights to which it was entitled, namely, notice and an opportunity to be heard.

We review the court's order for an abuse of discretion. Baker & Daniels, LLP v. Coachmen Indus., Inc., 924 N.E.2d 130, 136 (Ind. Ct. App. 2010) ("A trial court's decision to reinstate a case pursuant to Trial Rule 41(F) is reviewed for an abuse of discretion . . . ."), trans. denied; Thomas v. Thomas, 674 N.E.2d 23, 25 (Ind. Ct. App. 1996) (stating standard of review related to grant of motion for relief under Trial Rule 60(A)), reh'g denied, trans. denied. The trial court abuses its discretion when the judgment is clearly against the logic and effect of the facts and circumstances, as well as the reasonable inferences to be drawn therefrom. Thomas, 674 N.E.2d at 25. We must affirm if there is any legal ground in the record supporting the judgment, even if the trial court provides erroneous reasons for its ruling. Id.; see Estate of Lee ex rel. McGarrah v. Lee & Urbahns Co., 876 N.E.2d 361, 367 (Ind. Ct. App. 2007) (noting "we will affirm the ruling if it is sustainable on any legal basis in the record, even though this was not the reason enunciated by the trial court").

A.    Trial Rule 41(E) Hearing Requirement

The trial court did not conduct a hearing as contemplated by Ind. Trial Rule 41(E) prior to entering its June 28, 2011 order dismissing the case. Rule 41(E) provides that "the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case" and that the court may enter an order of dismissal "if the plaintiff shall not show sufficient cause at or before such hearing." The Indiana Supreme

Court and this Court have held that a court must generally hold a hearing prior to entering an order of dismissal under Trial Rule 41(E). See Wright v. Miller, 989 N.E.2d 324, 328 n.3 (Ind. 2013) (citing Rumfelt v. Himes, 438 N.E.2d 980, 983-984 (Ind. 1982), and providing that "in light of the gravity of the sanction of dismissal, we believe that the hearing required by Trial Rule 41(E) should henceforth likewise be held when a case dismissal is sought or contemplated under Trial Rule 37"); Rumfelt, 438 N.E.2d at 983-984 (holding that the trial court's order dismissing the action with prejudice "wholly fail[ed] to comply with the clear dictates of the rule requiring a hearing" and that "Trial Rule 41(E) clearly requires a hearing on a motion to dismiss which controls over Trial Rule 73 allowing the trial court to expedite its business by directing the submission and determination of motions without oral hearing," and remanding with instructions to order a hearing on the motion to dismiss under Rule 41(E)); Hatfield v. Edward J. DeBartolo Corp., 676 N.E.2d 395, 400 (Ind. Ct. App. 1997) (noting that Rule 41(E) specifically requires a hearing), reh'g denied, trans. denied; Moore v. Terre Haute First Nat. Bank, 582 N.E.2d 474, 478 (Ind. Ct. App. 1991) ("The Rumfelt and Nichols decisions unmistakably require an adversarial hearing because the plain language of T.R. 41(E) requires the plaintiff be given an opportunity to be heard."), reh'g denied; Nichols v. Ind. State Highway Dep't, 491 N.E.2d 227, 228 (Ind. Ct. App. 1986) ("Dismissal under T.R. 41(E) without such a hearing was an improper procedure."); Fulton v. Van Slyke, 447 N.E.2d 628, 634 n.7 (Ind. Ct. App. 1983) ("Under our rules of civil procedure, [] Trial Rule 41(E), a dismissal against the plaintiff for failure to comply with the rules or when

12

no action has been taken in a civil case for a period of 60 days must be preceded by a hearing, Rumfelt v. Himes . . . .").

Somerville points to two of this court's opinions stating that the hearing requirement in Trial Rule 41(E) is satisfied when the trial court orders a hearing. See Appellants' Brief at 16; Appellants' Reply Brief at 5 (citing Metcalf v. Estate of Hastings, 726 N.E.2d 372, 374 (Ind. Ct. App. 2000) (stating that, when the court orders a hearing and notice of the hearing date is sent to the plaintiff, the hearing requirement of Rule 41(E) is satisfied), trans. denied, and Ind. Dep't of Natural Resources v. Ritz, 945 N.E.2d 209, 212, 213 n.3 (Ind. Ct. App. 2011) (noting the statement in Metcalf above in a footnote but also observing in reciting the facts that, with respect to the cause subject to dismissal for failure to prosecute under Trial Rule 41(E), the trial court conducted a hearing prior to entering a dismissal of the cause), reh'g denied, trans. denied). In Metcalf, the court scheduled a telephonic hearing under Trial Rule 41(E), the plaintiff's counsel was unable to reach a telephone until after the scheduled time of the hearing, and the court later dismissed the action. Metcalf, 726 N.E.2d at 373. On appeal, the plaintiff argued the court erred by dismissing the case without holding a hearing, and this court stated that "when the court orders a hearing and notice of the hearing date is sent to the plaintiff, the hearing requirement of T.R. 41(E) is satisfied, regardless of whether the plaintiff or his counsel attends the hearing," noted that the plaintiff's counsel did not participate in the hearing and made no effort to reschedule the hearing and that the court had entered the dismissal sixty days after the scheduled hearing, and held that the plaintiff had an opportunity to respond "sufficient to satisfy the hearing requirement of

Rule 41(E)" and thus that the trial court did not err in dismissing the case without holding an adversarial hearing. Id. at 374. Counsel for the plaintiff in Metcalf did not appear for the scheduled hearing under Trial Rule 41(E) and was given sufficient time to show cause why the case should not be dismissed but failed to do so. This case is distinguishable from Metcalf.

The hearing requirement of Trial Rule 41(E) was not satisfied here where the parties appeared by counsel for the hearing to present arguments but the court did not hear their arguments. AFC filed its Response to Rule 41(E) Notice on the same day as the scheduled hearing arguing the case should not be dismissed. Contrary to Somerville's argument, AFC did not have an opportunity to be heard prior to the entry of the court's order of dismissal. Under these circumstances and in the light of the requirements of Trial Rule 41(E) as interpreted by our Courts, the trial court was required to hold a hearing under Trial Rule 41(E) prior to dismissing the cause of action. The trial court acknowledged this and stated that it had dismissed the case based upon the mistaken belief that AFC did not appear at the appointed date and time to show cause why the case should remain active and that the hearing should have been held. We agree with the trial court that the hearing requirement of Trial Rule 41(E) was not satisfied prior the entry of dismissal, and this supports the trial court's conclusion that the June 28, 2011 entry of dismissal was erroneous.

B.    Trial Rule 60(A)

We next address the court's order placing the cause of action back on the active docket. While the court's July 6, 2011 order reinstating the case did not specifically

14

provide the legal grounds for the reinstatement, the court's September 9, 2011 ruling on Somerville's motion to reconsider cited Ind. Trial Rule 60(A) and found there were several oversights or omissions plaguing the June 28, 2011 dismissal order. In reviewing the court's decision, we will affirm on any basis supported by the record even if the reason is different than the one enunciated by the trial court. See Estate of Lee, 876 N.E.2d at 367; Thomas, 674 N.E.2d at 25. With this tenet in mind, we turn to the court's decision to reinstate the cause of action.

The language of Trial Rule 60(A) permits a court on its own initiative to correct "clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission" at "any time before the Notice of Completion of Clerk's Record is filed under Appellate Rule 8." This Court has said that, in the context of Trial Rule 60(A), "clerical error" has been defined as "a mistake by a clerk, counsel, judge, or printer that is not a result of judicial function and cannot reasonably be attributed to the exercise of judicial consideration or discretion." KeyBank Nat'l Ass'n v. Michael, 770 N.E.2d 369, 375 (Ind. Ct. App. 2002), trans. denied. "The purpose of T.R. 60(A) is to recognize that *in the case of clearly demonstrable mechanical errors* the interests of fairness outweigh the interests of finality which attend the prior adjudication. On the other hand, where the 'mistake' is one of substance the finality principle controls." Rosentrater v. Rosentrater, 708 N.E.2d 628, 631 (Ind. Ct. App. 1999) (emphasis added) (quoting Sarna, 530 N.E.2d at 115) (internal quotation marks omitted)). In other words, if the error is purely mechanical, the trial court retains the authority, by

15

virtue of Rule 60(A), to modify its erroneous order. If the error is substantive, a Trial Rule 60(A) motion may not be used to correct it.

We observe that, while the dismissal order here is not the result of a typographical error and involves a dismissal which, as Somerville notes, was an appealable order, we note that Trial Rule 60(A) by its terms does not preclude a trial court from correcting mistaken orders which are appealable orders. See Trial Rule 60(A) (noting the court may correct an order "any time before the Notice of Completion of Clerk's Record"). While the court's mistake in this case—believing the parties did not appear to present arguments at the June 27, 2011 hearing—was not a fact expressly stated in the order of dismissal, the record shows and the trial court found that the order was based solely upon the court's mistake or oversight. We find that the court's mistaken belief, where the parties suggested in their filings and briefs that the mistake was the result of an oversight or a miscommunication between or actions taken by members of the court's staff, is more akin to a mechanical mistake than a substantive mistake in character.

Further, we view dismissals with disfavor, and dismissals are considered extreme remedies that should be granted only under limited circumstances. Turner v. Franklin Cnty. Four Wheelers Inc., 889 N.E.2d 903, 905 (Ind. Ct. App. 2008). The sanction of dismissal under Rule 41(E) without first holding a hearing would be an extreme penalty, especially where the party's counsel appeared for the hearing and filed a Response to Rule 41(E) Notice on the day of the scheduled hearing. We also observe that Ind. Code § 33-23-2-4 provides: "All courts retain power and control over their judgments for ninety (90) days after rendering the judgments in the same manner and under the same

16

conditions as they retained power and control during the term of court in which the judgments were rendered." The trial court's order setting aside the order of dismissal in this case was entered eight days after its entry of the order of dismissal, and the court's authority under Ind. Code § 33-23-2-4 was not limited by or inconsistent with its obligations under Trial Rule 60.

In light of the breakdown in communications between the court, its staff, and counsel representing the parties, the fact that the hearing requirement of Trial Rule 41(E) was not satisfied prior to the entry of dismissal, the trial court's subsequent statements that it would not have dismissed the case without first holding a hearing had it been aware that counsel for the parties were present for the hearing, and our preference for deciding cases on their merits, we cannot say that the trial court abused its discretion in setting aside the order of dismissal on the basis of Trial Rule 60(A), and consistent with Ind. Code § 33-23-2-4.

II.

The next issue is whether the trial court erred in entering summary judgment in favor of AFC and against Sommerville. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Mangold ex rel. Mangold v. Ind. Dep't of Natural Resources, 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. Id. In reviewing a trial court's ruling on a motion for summary judgment, we

17

may affirm on any grounds supported by the Indiana Trial Rule 56 materials. Catt v. Bd. of Commr's of Knox Cnty., 779 N.E.2d 1, 3 (Ind. 2002). The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of material fact to be resolved. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. Id. They merely aid our review by providing us with a statement of reasons for the trial court's actions. Id. We review a summary judgment order *de novo*. Bules v. Marshall Cnty., 920 N.E.2d 247, 250 (Ind. 2010).

Somerville asserts that the court erroneously granted summary judgment because there is a question of fact as to whether Merenciano's actions reasonably put AFC on notice that his actions were unauthorized. Somerville argues that, even assuming the court properly determined that the agency letter manifested Somerville's intent to appoint Merenciano as its agent to buy vehicles and access its AFC credit line to do so, the designated facts show that subsequent transactions did or should have given rise to a reasonable belief that Merenciano was not acting for the benefit of Somerville. In support of its argument, Somerville points to the facts that, when AFC conducted a field audit, it dealt solely with Merenciano at his dealership at a different address than Somerville's dealership, that AFC did not visit Somerville's dealership during the year in which the transactions in question occurred, that AFC increased Somerville's credit limit in order to accommodate Merenciano's transactions without first obtaining Somerville's authorization and allowed Merenciano to exceed that credit limit, and that AFC accepted

18

checks from Merenciano that came from accounts that Somerville never disclosed to AFC during the application process.

AFC maintains that it reasonably believed that Somerville's agent had the authority to bind Somerville and thus that the court did not err in granting summary judgment in favor of AFC. AFC argues that Souza executed an agency letter which expressly authorized Merenciano to act as its agent during the time purchases at issue in this case occurred. AFC further argues that the evidence does not show that AFC knew or should have known that Somerville resided at only one address or used only one bank account and does not show that AFC was aware or was informed that Somerville conducted business from only one location or had only one appropriate address. AFC's position is that there was no limitation as to the place, address, or bank account Merenciano was required to use when conducting business on behalf of Somerville.

In its reply brief, Somerville argues that "[t]he only way AFC's argument works is if this Court construes the Agency Letter as virtually unlimited in the authority it bestows on Merenciano and at the same time absolves AFC of any duty to question Merenciano's actions" when these actions were clearly "not to buy and sell automobiles on Somerville's behalf." Appellants' Reply Brief at 8.

The Indiana Supreme Court has described apparent authority as follows:

Apparent authority is the authority that a third person reasonably believes an agent to possess because of some manifestation from his principal. The necessary manifestation is one made by the principal to a third party, who in turn is instilled with a reasonable belief that another individual is an agent of the principal. It is essential that there be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party. Statements or

19

> manifestations made by the agent are not sufficient to create an apparent agency relationship.

Gallant Ins. Co. v. Isaac, 751 N.E.2d 672, 676-677 (Ind. 2001) (quoting Pepkowski v. Life of Ind. Ins. Co., 535 N.E.2d 1164, 1166-1167 (Ind. 1989)) (internal citations omitted). The "manifestations" need not be in the form of direct communications, "but rather the placing of the agent in a position to perform acts or make representations which appear reasonable to a third person is a sufficient manifestation to endow the agent with apparent authority." Gallant, 751 N.E.2d at 677 (citation omitted). Generally, the question of whether an agency relationship exists is a question of fact. Cain Family Farm, L.P. v. Schrader Real Estate & Auction Co., Inc., 991 N.E.2d 971, 977 (Ind. Ct. App. 2013) (citing Douglas v. Monroe, 743 N.E.2d 1181, 1187 (Ind. Ct. App. 2001)). However, if the evidence is undisputed, there are times when summary judgment is appropriate in agency cases. Id.

The designated evidence includes the October 2002 Agreement and Souza's guaranty and shows that Somerville could request advances against a line of credit under the Agreement to finance its purchase of automobiles for resale. The Agreement includes various provisions regarding financing including applicable interest rates, floorplan fees, processes to request and conditions to advances, repayment of Somerville's obligations,[3] the collateral and AFC's security interest, covenants regarding maintenance of collateral, records requirements, notice obligations, Somerville's obligations regarding insurance

---

[3] With respect to the repayment of purchase money inventory obligations, Somerville agreed with some exceptions to pay AFC within forty-eight hours after the disposition of an item of purchase money inventory.

20

and taxes, various representations and warranties by Somerville related to ownership and licensing, and events of default and remedies.

The designated evidence also includes a Representation Authorization Letter executed by Souza on behalf of Somerville, dated February 24, 2006, stating that Merenciano was "authorized to buy and sell automobiles for [Somerville] and, in connection therewith, to execute company checks or drafts and any other necessary instruments or documents on behalf of said dealership at any Subscribing Customer[4] where [Somerville] currently does or may do business until such time as [Somerville] provides written notice of termination of authorization . . . ." Appellants' Appendix at 67. On February 20, 2007, Somerville executed a Representation Removal Letter stating that it wished to remove Merenciano from its account with all Auction ACCESS Subscribing Customers where Somerville conducted business and that Merenciano was no longer authorized to conduct business on behalf of Somerville. Between February 2006 and February 2007, Merenciano purchased fifteen automobiles and requested AFC to make advances under the Agreement, and AFC approved the requests and made the advances. The financing was requested or approved in the months of September 2006 through January 2007, and Somerville failed to timely repay its debt with respect to these automobiles.

In his affidavit, Souza stated that it was his understanding that, by executing the Representative Authorization Letter, he "granted access to [] Merenciano under [his]

---

[4] The letter also stated: "[Somerville] wishes to authorize and register, as of the date listed below, the following person as an Authorized Representative at all Auction ACCESS subscribing customers ('Subscribing Customers') where [Somerville] is registered to do business." Appellants' Appendix at 67.

Dealership ID with Auction ACCESS to certain vehicle auctions" and that "[i]t was never [his] understanding and intention that by executing the [letter that he] authorized [] Merenciano access to Somerville's floor plan financing with AFC." Id. at 103-104. Souza stated that he was aware that Merenciano operated a used car dealership by the name of "Mega Auto Sales" at an address on Cambridge Street and that Somerville has never conducted business at the Cambridge Street address. Id. at 105. Souza further stated that he reviewed AFC's internal documents describing audits conducted by AFC pursuant to the Agreement, that many of the audits indicated discussions with Merenciano, and that not one of the audits included a visit to Somerville's place of business or discussion with Souza.

Souza also stated that Somerville's financial institution was Citizens Bank, that three checks signed by Merenciano made payable to AFC were from an account at Winter Hill Bank, and that each of those checks were returned for insufficient funds. Souza also stated that Somerville's credit line was initially $50,000 and that the credit line was increased to $100,000 in 2003 and $150,000 in 2005. Somerville designated evidence that each of these increases were authorized by an Aggregate Advance Limit Amendment to the Agreement signed by Souza on behalf of Somerville. Souza stated in his affidavit that, "sometime after September 13, 2006, Somerville's credit line was increased from $150,000 to $200,000" and that "[n]either Somerville nor I authorized any increase in Somerville's credit line with AFC, beyond the $150,000 I approved on October 5, 2005." Id. at 106-107. Souza also stated that he learned in early 2007 from a manager at AFC the extent of the unauthorized obligations incurred on Somerville's floor

22

plan with AFC, that he told AFC that he believed Somerville was not obligated to pay for debt incurred by Merenciano without his knowledge or consent, and that he reported Merenciano's unauthorized use of Somerville's line of credit to the police.

We find that AFC demonstrated that it reasonably believed Merenciano possessed the authority to act as an agent of Somerville for the purpose of purchasing vehicles using the financing available to Somerville under the Agreement. As evidenced by the February 24, 2006 Representation Authorization Letter, Somerville authorized Merenciano to buy and sell automobiles on its behalf and to execute any necessary documents in order to do so, and the authorization was revoked in February 2007. Somerville entered the Agreement in order to obtain a line of credit to purchase vehicles, and the designated evidence does not establish that Somerville's agents including Merenciano were not permitted, or that AFC was aware that Somerville's agents were not permitted, to use the available financing to purchase vehicles. The facts that the address of Merenciano's dealership was different than the address identified by Somerville as its place of business or as its address for purposes of notice, and that checks signed by Merenciano were from an account at a bank other than the bank identified by Somerville as its financial institution, do not establish that AFC should have reasonably known that Merenciano lacked the authority to purchase vehicles using the financing available under the Agreement, as a borrower may have more than one location or bank account.[5] AFC

---

[5] The Agreement defines "Dealer's Place of Business" as "any or all of the following locations: (a) the place where the Collateral and Dealer's books and records are kept; (b) the place from which Dealer's business affairs and operations are conducted; and (c) the place where Dealer's registered office is located." Appellants' Appendix at 57.

23

designated evidence of facts showing that Somerville placed Merenciano in a position to perform acts on its behalf which appeared reasonable to a third party, and Somerville has not designated evidence of facts showing the existence of a genuine issue of material fact on the question of apparent authority.

Based upon the record, we conclude that AFC demonstrated that it reasonably believed that Merenciano was an agent of Somerville for the purpose of purchasing vehicles using the line of credit or financing made available to Somerville by AFC pursuant to the Agreement. See Gallant, 751 N.E.2d at 677-678 (holding that the evidence showed that Thompson-Harris had apparent authority to bind Gallant, that is, "Gallant's dealings with Isaac [] contained the manifestations required [] to cause Isaac reasonably to believe that Thompson-Harris had authority to bind Gallant"); Cain Family Farm, 991 N.E.2d at 978-979 (holding that Cain Family Farm did not designate evidence of facts showing the existence of a genuine issue of material fact on the question of apparent authority, that Cain Family Farm "placed Candace in a position to perform acts appearing reasonable to a third person such as Drerup, including executing the Antlers Ridge Purchase Agreement, and their action in doing so was sufficient to endow Candace with apparent authority," and that Candace had apparent authority, as a matter of law, to execute the Purchase Agreement). Accordingly, the trial court did not err in granting summary judgment in favor of AFC and against Somerville.[6]

CONCLUSION

---

[6] Because we find that summary judgment in favor of AFC was proper based upon principles of apparent authority as found by the trial court, we need not address Somerville's argument that summary judgment would not be proper based upon principles of judicial estoppel.

24

For the foregoing reasons, we affirm the trial court's orders placing the cause of action on the active docket and granting summary judgment in favor of AFC.

Affirmed.

BARNES, J., and ROBB, J., concur.