# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 06 2018, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Scott A. Norrick
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of Z.J.W.
(Minor Child):


L.S.,

*Appellant-Petitioner/Intervenor,*

v.

The Indiana Department of
Child Services,

*Appellee-Petitioner/Intervenor.*

March 6, 2018

Court of Appeals Case No.
48A02-1710-JC-2322

Appeal from the Madison Circuit
Court

The Honorable G. George Pancol,
Judge

Trial Court Cause Nos.
48C02-1307-JC-159
48C02-1610-GU-576

**Bailey, Judge.**

# Case Summary

L.S. ("Paternal Grandmother") intervened in a Child in Need of Services ("CHINS") action involving Z.J.W. ("Child"). After the CHINS court authorized the filing of a petition for termination of parental rights, Paternal Grandmother filed a petition for guardianship. The parallel actions proceeded at some length, with conflicting custody results, and Paternal Grandmother eventually sought a consolidated hearing. The Madison Circuit Court entered a consolidated order declaring that the guardianship order had been dismissed and the CHINS court was the proper court for future litigation. Paternal Grandmother requested that the order be certified for interlocutory appeal; the motion was denied. She then filed a motion to correct error, which was denied. She now appeals. We affirm.

# Issues

Paternal Grandmother presents two issues, which we restate as follows:

    I.    whether the trial court, having dismissed the CHINS action, lacked jurisdiction to reinstate it one day later or to enter any subsequent CHINS order involving Child; and

    II.    whether the guardianship action survived.

# Facts and Procedural History

On July 24, 2013, Z.W.'s parents ("Father" and "Mother") admitted that Child was a CHINS. Child was initially placed with his half-sister, at the half-sister's

paternal grandmother's home. Mother agreed to the termination of her parental rights. Father participated in some services and was briefly reunited with Child; however, Child was later removed from Father's care and placed in the home of Foster Parents. Foster Parents adopted Child's half-sibling and expressed a willingness to adopt Child.

[4]     In July of 2015, the CHINS permanency plan for Child was changed to adoption. In July of 2016 and July of 2017, the CHINS court approved subsequent permanency plans for adoption. On November 1, 2016, Paternal Grandmother was granted leave to intervene in the CHINS proceeding; the DCS filed an unsuccessful motion for reconsideration.

[5]     One day prior to the CHINS intervention, on October 31, 2016, Paternal Grandmother had petitioned to be appointed Child's guardian, and the Madison Circuit Court Clerk assigned a guardianship cause number. Father executed and filed his consent to Paternal Grandmother's guardianship. The DCS was not initially joined as a party; however, the DCS was granted leave to intervene.[1] On November 7, 2016, the DCS moved to dismiss the guardianship petition, alleging defective service; the motion was granted on November 29,

---

[1] Indiana Trial Rule 19 provides in relevant part that a party shall be joined if "he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may: (a) as a practical matter impair or impede his ability to protect that interest, or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

2016. Thereafter, on December 6, 2016, Paternal Grandmother filed a response to the DCS's allegations and a motion to set aside the dismissal order.

[6] On December 9, 2016, the trial court reviewed the motion to set aside the dismissal and scheduled the matter for a hearing. On January 19, 2017, the trial court conducted a hearing at which Child's paternal relatives and his Family Case Manager testified. On January 27, 2017, the trial court issued an order appointing Paternal Grandmother guardian of Child.

[7] Foster Parents were permitted to intervene and they filed a motion to set aside the guardianship order. The DCS filed a motion to correct error on February 24, 2017. On February 28, 2017, the trial court denied the motion to correct error. Subsequently, the trial court denied the motion to set aside.

[8] On March 28, 2017, the trial court issued an order providing:

> Comes now the Court after taking this matter under advisement, considers the Interveners['] request, and also reconsiders the Department of Child Services Motion to Dismiss and Motion to Correct Errors. The Court finds that the Motion to Dismiss is denied. However, the Court does set aside the Guardianship in this matter and finds that pursuant to IC 31-30-1-1 that the Court will stay all proceedings in the Guardianship pending the dismissal of the CHINS case or the permanency plan being modified to a plan for appointment of a guardian.

(App. Vol. II, pg. 80.) A corresponding entry was made into the Chronological Case Summary indicating that the guardianship was set aside but the guardianship proceedings were stayed.

[9] On August 2, 2017, Paternal Grandmother filed an objection to CHINS court jurisdiction. Two days later, she moved to limit DCS participation, lift the stay, and reinstate her guardianship of Child. Foster Parents filed a response. The DCS filed a memorandum of law and a "Request for Relief in Ongoing CHINS/Guardianship/Termination Proceedings." (App. Vol. II, pg. 9.) Notwithstanding the trial court's earlier order of dismissal or stay, the court set the matter for a hearing.

[10] Meanwhile, Father had filed – on March 7, 2017 – a motion to dismiss the CHINS proceedings. Therein, he advised the court that a hearing had been held on January 19, 2017 and that, on January 26, 2017, guardianship of Child had been awarded to Paternal Grandmother. According to Father's petition:

> That undersigned counsel request[s] that DCS dismiss the CHINS and TPR case as there is no longer need for coercive intervention of the court and the permanency of the child has been determined by granting of the guardianship.

(App. Vol. II, pg. 233.)

[11] On April 3, 2017, the CHINS court granted Father's motion to dismiss.[2] However, on the following day, the court entered an order, upon its own motion, setting aside the order granting the motion to dismiss, and setting the

---

[2] Paternal Grandmother filed a separate motion to dismiss and request for change of placement, which the CHINS court denied on March 22, 2017, shortly before ruling upon Father's motion to dismiss.

matter for hearing. The order included the notation: "DCS is responsible for the child's placement and care." (App. Vol. II, pg. 192.)

[12] Upon Paternal Grandmother's motion to consolidate the causes of action regarding Child for purposes of a hearing, the Madison Circuit Court conducted hearings on August 15, 2017 and on August 30, 2017.[3] On the latter date, the trial court entered the order underlying Paternal Grandmother's motion for certification of interlocutory appeal and motion to correct error:

> The Court having taken this matter under advisement and reviewing all of the pleading[s] filed now makes the following findings and order:
>
> Justice David, in his decision [*In re M.B.*, 51 N.E.3d 230 (Ind. 2016)], stated that the custody Court had subject matter jurisdiction however, where the Juvenile Court was already exercising exclusive jurisdiction over the CHINS proceeding and the independent custody action did not arise out of one of the enumerated exceptions to that exclusive jurisdiction, the Court in which the independent custody action was filed must stay the proceeding and abstain from exercising its jurisdiction until the CHINS case is concluded.
>
> In this case the Court finds no exception to the exclusive jurisdiction of the Juvenile Court. However, IC 31-35-2-3 does provide concurrent jurisdiction when a Termination Petition has been filed and IC 31-34-21-7 requires that if a CHINS Petition is pending that the Guardianship be transferred to the Juvenile Court having exclusive jurisdiction over the CHINS matter,

---

[3] These hearings were not transcribed.

therefore, the Juvenile Court and Presiding Judge of that Court have exclusive jurisdiction over the Guardianship matter to avoid competing judicial actions.

The Juvenile Court, and the Presiding Judge of the Juvenile Court is presiding over the CHINS matter as well as the Guardianship matter and therefore had jurisdiction to proceed in this Guardianship. The Court finds that due to the fact that a Petition for Termination was filed and the case was filed in the Juvenile Court, the Juvenile Court did have and does have jurisdiction to proceed on the Guardianship.

However, the Court does find that the Petition for Guardianship did lack the statutory requirements as pointed out by the Department of Child Services and that case was dismissed and while the Court has subject matter jurisdiction to hear the Guardianship and exclusive jurisdiction, which would avoid any stay in the Guardianship, the Court shows that that dismissal was granted. That cause was never reinstated and that all proceedings in that action after the granting of the dismissal are hereby vacated by the Court. Consequently, the CHINS Petition will remain in full force and effect and all proceeding[s] will be continued under that CHINS Petition. The Termination Petition will also remain as an active case and is to be rescheduled for a hearing. The Court [is] making a specific finding that all proceedings in the CHINS matter and any future filing of Guardianship are to be heard by the Presiding Judge and sets this matter for review on August 30, 2017 at 1:30 p.m.

(Appealed Order, pgs. 1-2.)[4] Paternal Grandmother filed a Motion for Certification of Interlocutory Appeal, claiming that the court had misconstrued the guardianship record to support vacation of some proceedings and had also failed to address pending motions and a jurisdictional objection. The motion for certification of interlocutory appeal of the August 30, 2017 order was denied on September 5, 2017. On September 8, 2017, Paternal Grandmother filed a motion to correct error; the motion was denied four days later. She now appeals.[5]

# Discussion and Decision

## Standard of Review

[13] Paternal Grandmother's Notice of Appeal indicates that she appeals from the denial of a motion to correct error. The trial court's decision on a motion to correct error comes to this Court with a presumption of correctness; and the appellant bears the burden of showing an abuse of discretion. *Faulkinbury v. Broshears*, 28 N.E.3d 1115, 1122 (Ind. Ct. App. 2015). Here, the motion to correct error challenged the August 30, 2017 order.

---

[4] On August 31, 2017, Paternal Grandmother and Father filed Motions to Modify Permanency Plan and for Placement, to which the DCS objected. On September 30, 2017, the CHINS court denied the request for change of placement.

[5] The parental rights termination petition had already been set for hearing. Also, Foster Parents filed a petition to adopt Child and Paternal Grandmother filed a competing petition for adoption.

[14] The August 30, 2017 order was a response to Paternal Grandmother's contentions that the CHINS court lacked jurisdiction to proceed after dismissing and reinstating the CHINS action and that, instead, the guardianship order should be reinstated or enforced. The order set forth the basis for the CHINS court jurisdiction and clarified the court's position that the guardianship petition had been dismissed and never reinstated. No disputed issues of fact were involved. An issue presenting a pure question of law is reviewed de novo. *Austin v. State*, 997 N.E.2d 1027, 1039 (Ind. 2013).

## CHINS Court Jurisdiction

[15] After multiple parties interested in the care and custody of a child pursued, at some length, parallel legal proceedings and, in the process, generated voluminous pleadings, motions to set aside, and arguments, resulting in various dismissals, reinstatements, and conflicting orders, one party finally sought a consolidated hearing. The resulting order referenced both the guardianship and CHINS cause numbers.

[16] At the outset, the consolidated order acknowledged our Indiana Supreme Court's decision *In re M.B.*, 51 N.E.3d 230 (Ind. 2016). A CHINS proceeding regarding M.B. was pending when paternal relatives unsuccessfully sought to intervene and then filed an emergency petition for custody under a separate cause number in the same county as the CHINS case. *Id.* at 232. The trial court determined that the relatives did not have standing to bring an independent custody action and the court did not have jurisdiction to hear the

independent custody matter while a CHINS case was pending. *Id.* On transfer, the Indiana Supreme Court found that dismissal for lack of standing and jurisdiction was error. *Id.* The Court stated its holding as follows:

> We hold that Aunt and Uncle had standing to bring the independent custody action. We also hold that the Posey Circuit Court has subject matter jurisdiction over the independent custody action, but should have stayed the proceedings and abstained from exercising its jurisdiction until the CHINS action concluded. The juvenile court's exercise of exclusive jurisdiction over the CHINS proceeding did not *divest* the circuit court of subject matter jurisdiction over an independent custody action, but it did require the circuit court to postpone its exercise of jurisdiction. We advise that the term "jurisdiction" should not be used too broadly.

*Id.* at 232-33. The Court went on to explain that a court may have jurisdiction at a time when it is not appropriate to exercise that jurisdiction:

> [W]e conclude that the Posey County Circuit Court did possess *subject matter jurisdiction*, which is properly defined as "the power to hear and determine cases of the general class to which any particular proceeding belongs." *K.S.*, 849 N.E.2d at 540. Yet, having jurisdiction does not automatically mean that it would be appropriate for the circuit court to *exercise* that jurisdiction. "[C]ourts of concurrent jurisdiction cannot exercise jurisdiction over the same subject at the same time, and [] where one of the courts acquires jurisdiction of the subject matter and the parties, it is vested with such jurisdiction to the exclusion of the other court until the final disposition of the case." *State ex. Rel. American Fletcher Nat. Bank & Trust Co. v. Daugherty*, 258 Ind. 632, 634-35, 283 N.E.2d 526, 528 (1972). In addition, "[t]his rule is not mitigated where the subject matter before the separate courts is the same, but the actions are in different forms." *Id.*

In the present case, a CHINS proceeding and a custody action are distinct in form, but we acknowledge that both involve the same subject matter, which is the care and custody of M.B. Due to this, it would have been appropriate for the circuit court to have allowed the parties to file their independent custody action, but stay the action until the conclusion of the CHINS proceeding, or, had the parties filed a 12(B)(8) motion, the court could possibly have dismissed on those grounds. A court of concurrent jurisdiction should abstain from exercising that jurisdiction when the subject matter is properly before another court. We seek to clarify that abstention is not the same as relinquishing or being divested of jurisdiction[.] . . . Again, it would have been appropriate in the present case for the circuit court to simply postpone its exercise of jurisdiction over the independent custody action until the conclusion of the CHINS proceeding. A stay would not be necessary in cases arising under one of the enumerated exceptions of Indiana Code § 31-30-1-1(2), which clearly provides for specific cases to continue in other courts while a CHINS proceeding is pending.

We advise that, absent a 12(B)(8) motion from the parties, the circuit court may allow the parties to file an independent custody action while a CHINS proceeding is pending in juvenile court. However, the circuit court may not exercise its jurisdiction over that action until the CHINS proceeding has concluded. Rather, all action in the custody case should be stayed.

*Id.* at 235-36. Here, the guardianship action involves the same subject matter as the CHINS case, the care and custody of Child. The Madison Circuit Court correctly acknowledged that the *M.B.* reasoning was applicable to the matter before it. Paternal Grandmother's guardianship claim should not have proceeded before the CHINS case concluded.

[17] However, according to Paternal Grandmother, there was no CHINS case to proceed after the court dismissed the CHINS case on April 3, 2017. Paternal Grandmother asserts that the CHINS court had no basis upon which to reinstate the CHINS case on the following day.

[18] Indiana Code Section 31-30-1-1(2) grants exclusive original jurisdiction to the juvenile court in proceedings in which a child is alleged to be a CHINS. Pursuant to Indiana Code Section 31-30-2-1(a), the juvenile court's jurisdiction over a delinquent child or a CHINS continues until the child becomes twenty-one years of age, *unless the court discharges the child* and the child's parent guardian, or custodian *at an earlier time* (emphasis added).

[19] Paternal Grandmother asserts that a dismissal is an irrevocable discharge of a CHINS case, absent statutory authority for reinstatement. *See* Ind. Code § 31-34-21-11, providing: "When the juvenile court finds that the objectives of the dispositional decree have been met, the court shall discharge the child and the child's parent, guardian, or custodian." Paternal Grandmother directs our attention to *Lake Cty. Div. of Fam. & Child Servs. v. Charlton*, 631 N.E.2d 526 (Ind. Ct. App. 1994) (a child was no longer a CHINS pursuant to the statutory definition, where the parents were meeting the child's medical needs) and *In re A.T.*, 889 N.E.2d 365 (Ind. Ct. App. 2008) (holding that CHINS court lacked jurisdiction over the nineteen-year-old former CHINS, and could not properly set aside dismissal and reinstate wardship upon her petition), *trans. denied*.

[20] The *In re A.T.* Court relied, in part, upon *W.L. v. State*, 707 N.E.2d 812 (Ind. Ct. App. 1999). W.L. had been adjudicated delinquent, and was placed on suspended commitment; the State filed a Motion to Reopen for Restitution. *Id.* at 813. The motion was granted and the trial court conducted a restitution hearing; W.L. appealed. *Id.* He argued that the trial court was divested of jurisdiction after entering the dispositional decree. *Id.* This Court found an absence of jurisdiction, explaining:

> In summary, a juvenile court that retains jurisdiction over a juvenile may modify a dispositional decree so long as it retains such jurisdiction. *See* IC § 31-37-22-1(2)(E). In the instant case, however, the court discharged W.L. upon entry of the dispositional decree and thus did not retain jurisdiction. After being divested of jurisdiction, the court could reacquire jurisdiction only through the means set forth in IC § 31-30-2-3 or IC § 31-30-2-4. Our examination of the record reveals that the juvenile court did not reassume jurisdiction over W.L. through either of those means or in any other manner authorized by statute. As a result, the court was without jurisdiction to rule upon the Motion to Reopen for Restitution.

*Id.* at 814. The statutory bases for reinstatement are found in Indiana Code Section 31-30-2-3 (sua sponte reinstatement within thirty days upon notification from the Department of Correction regarding the child's release) and 31-30-2-4 (on petition of the Department of Correction). *In re A.T.*, 889 N.E.2d at 368.

[21] Paternal Grandmother then argues that the CHINS action involving Child did not involve one of these statutory bases for reinstatement. We agree with Paternal Grandmother that a discharged CHINS case may not be reinstated

upon a motion for reconsideration or an alternative non-statutory basis advanced by a party. Here, however, we are confronted with a court's sua sponte retraction of its order from the prior day. Thus, the question becomes whether a CHINS court may promptly correct error upon its own initiative before the placement of a child is changed. The authorities cited by Paternal Grandmother, pertaining to CHINS dismissal and reinstatement, do not explicitly hold that a CHINS court is deprived of the ordinary incidents of entering a judgment, including the ability to correct error from oversight.

[22] Indiana Trial Rule 60(A), available to correct non-substantive error, provides:

> Of its own initiative or on the motion of any party and after such notice, if any, as the court orders, clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the trial court at any time before the Notice of Completion of Clerk's Record is filed under Appellate Rule 8. After filing of the Notice of Completion of Clerk's Record and during an appeal, such mistakes may be corrected with leave of the court on appeal.

[23] The DCS contends that the CHINS court was correcting an oversight stemming from a miscommunication, that is, the CHINS court had not been apprised of the Guardianship order(s) entered after Father's motion was filed. The DCS has advised that a meeting took place on April 4, 2017, in the judge's chambers and that this meeting included attorneys for Paternal Grandmother, Father, the DCS, and Foster Parents. Allegedly, the court was made aware that Father's motion to dismiss contained obsolete information, prompting the trial court to rescind its order of one day earlier. This discussion, if it took place, is not

reflected in the record before us.  Nor is there a statement of evidence compiled pursuant to Indiana Appellate Rule 31.[6]

[24]    On the record before us, we simply cannot discern precisely why the CHINS court took the action that it did.  However, Trial Rule 60(A) does not obligate the trial court to provide specific reasons.  Nor does this Rule "by its terms" operate to "preclude a trial court from correcting mistaken orders which are appealable orders."  *Somerville Auto Transport Service, Inc. v. Automotive Finance Corp.*, 12 N.E.3d 955, 964 (Ind. Ct. App. 2014).  In *Somerville*, the trial court had dismissed the case based upon the mistaken belief that a party did not appear; the court sua sponte placed the cause of action back on the active docket after recognizing its oversight.  Appellant Somerville argued that Trial Rule 60(A) could not provide relief from a dismissal with prejudice because the dismissal was not a clerical mistake and the rule was not intended to be used for correcting errors of substance; this Court affirmed the trial court's orders.  12 N.E.3d at 961.  We reasoned:

> [I]f the error is purely mechanical, the trial court retains the authority, by virtue of Rule 60(A), to modify its erroneous order. If the error is substantive, a Trial Rule 60(A) motion may not be used to correct it.

---

[6] Appellate Rule 31 (A) provides that, where no transcript of all or part of the evidence is available, a party may prepare a verified statement of the evidence and file a motion to certify the statement of evidence with the trial court.  Subsection (D) provides that, if statements or conduct of the trial court judge are in controversy, and the trial court judge refuses to certify the statement of evidence, the trial court shall file an affidavit setting forth his or her recollection of the disputed statements or conduct.

We observe that, while the dismissal order here is not the result of a typographical error and involves a dismissal which, as Somerville notes, was an appealable order, we note that Trial Rule 60(A) by its terms does not preclude a trial court from correcting mistaken orders which are appealable orders. *See* Trial Rule 60(A) (noting the court may correct an order "any time before the Notice of Completion of Clerk's Record"). While the court's mistake in this case – believing the parties did not appear to present arguments at the June 27, 2011 hearing – was not a fact expressly stated in the order of dismissal, the record shows and the trial court found that the order was based solely upon the court's mistake or oversight. We find that the court's mistaken belief, where the parties suggested in their filings and briefs that the mistake was the result of an oversight or a miscommunication between or actions taken by members of the court's staff, is more akin to a mechanical mistake than a substantive mistake in character.

*Id.* at 963-64.

[25] Here, too, there is every reason to believe that the CHINS court had not been apprised of the most recent proceedings concerning Child's custody when it dismissed the CHINS action. Father had not amended his pleading in that regard. In the face of apparent mistake or oversight, the CHINS court was not precluded from summarily correcting its order upon its own initiative. We cannot provide Paternal Grandmother with any relief on her claimed jurisdictional grounds.

## Declaration that Guardianship was Dismissed

[26] Pursuant to the guidance of *M.B.*, Paternal Grandmother's guardianship proceeding should have – at a minimum – been subject to a stay. It was

arguably also subject to dismissal for non-compliance with statutory requirements. There was, however, contradictory language employed in the order of March 28, 2017. As the proceedings unfolded, Paternal Grandmother sought relief upon the premise that a stay was in place, which could be lifted. The August 30, 2017 order, not independently a model of clarity, both recognized an earlier dismissal as opposed to a stay and purportedly vacated all post-dismissal proceedings.

[27] At bottom, the court issued an order of clarification in a consolidated hearing and did not adjudicate the contested issue of custody. As such, the order is interlocutory.[7] Indeed, Paternal Grandmother took this position in filing her Motion for Certification of Interlocutory Appeal. The subsequent filing of a motion to correct error did not convert an interlocutory order into a final appealable judgment. *See Bayless v. Bayless*, 580 N.E.2d 962, 966 (Ind. Ct. App. 1991) (recognizing that "the denial of the motion to correct errors did not transform the matter into a final judgment"), *trans. denied*. By all indications, here the parties continued to litigate Child's custody. "An attempt to appeal an interlocutory order as if it were a final judgment results in waiver of the issue." *Id.* In sum, we are unable to afford Paternal Grandmother any meaningful

---

[7] Indiana Appellate Rule 2(H) provides that a judgment is a final judgment if: (1) it disposes of all claims as to all parties; (2) the trial court in writing expressly determines under Trial Rule 54(B) or Trial Rule 56(C) that there is no just reason for delay and in writing expressly directs the entry of judgment; (3) it is deemed final under Trial Rule 60(C); (4) it is a ruling on a mandatory or permissive Motion to Correct Error which was timely filed under Trial Rule 59 or Criminal Rule 16; or (5) it is otherwise deemed final by law.

relief based upon alleged error in the Madison Circuit Court's summary clarification of its earlier orders.

# Conclusion

[28] Paternal Grandmother has not shown that the Madison Circuit Court, presiding over a CHINS matter, lacked jurisdiction. Paternal Grandmother has not perfected an interlocutory appeal.

[29] Affirmed.

Kirsch, J., and Pyle, J., concur.